**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH PATRICK CUVIELLO,
            *Plaintiff-Appellant*,

v.

CITY OF VALLEJO; M. CUTNICK, City
of Vallejo Police Officer; CLAUDIA
QUINTANA, City of Vallejo City
Attorney,
            *Defendants-Appellees.*

No. 17-16948

D.C. No.
2:16-cv-02584-
KJM-KJN

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted February 8, 2019
San Francisco, California

Filed December 10, 2019

Before: Richard A. Paez and Marsha S. Berzon, Circuit
Judges, and Gary Feinerman,[*] District Judge.

Opinion by Judge Paez;
Dissent by Judge Feinerman

---

[*] The Honorable Gary Feinerman, United States District Judge for
the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's denial of plaintiff's motion for a preliminary injunction seeking to enjoin the enforcement of the City of Vallejo's requirement that individuals obtain permits before they use sound-amplifying devices within the City.

Plaintiff sought to use a bullhorn so that he could amplify his voice during weekend protests of alleged animal mistreatment at Six Flags Discovery Park in Vallejo, where the noise of the park hampers his ability to spread his message. Concerned that the City would enforce the permit requirement against him, plaintiff filed this action, contending that the permit requirement set forth in Chapter 8.56 of the Vallejo Municipal Code violates the First Amendment of the United States Constitution and the Liberty of Speech Clause of the California Constitution.

The panel first held that the case was not moot even though the City of Vallejo had recently amended Chapter 8.56. The panel held that the gravamen of plaintiff's complaint and the irreparable harm that plaintiff alleged remained unaffected by the amendments.

The panel held that district court abused its discretion by concluding that plaintiff was unlikely to succeed on the merits of his claim that the permit requirement imposed an unconstitutional prior restraint on public speech. The panel

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that under California law, because Section 8.56.030 establishes a permit requirement in advance of public speech and bans an instrumentality of speech absent a permit, it imposes a prior restraint. The panel concluded that although the permit requirement furthered the City's significant interests, it was not narrowly tailored because it covered substantially more speech than necessary to achieve those interests.

The panel held that the district court abused its discretion by failing to recognize that a police officer's threat of criminal sanctions against plaintiff constituted irreparable harm. The panel held that as long as Section 8.56.030 remains in effect, the threat of enforcement against plaintiff will persist, chilling his exercise of free speech rights. Under the circumstances, the panel held that plaintiff's delay in bringing his action did not significantly undercut his showing of irreparable harm.

The panel held that the district court abused its discretion in finding that the balance of equities tipped in the City's favor and that halting the enforcement of Chapter 8.56 would not be in the public interest.

Dissenting, Judge Feinerman stated that plaintiff filed his suit one year after he had last been threatened with enforcement of the challenged ordinance, and he then waited five months after filing suit to move for a preliminary injunction. In Judge Feinerman's view, this lengthy and unjustified delay showed that plaintiff did not suffer irreparable harm and therefore disentitled him to preliminary injunctive relief.

## COUNSEL

Julie A. Murray (argued) and Scott L. Nelson, Public Citizen Litigation Group, Washington, D.C., for Plaintiff-Appellant.

Katelyn M. Knight (argued), Deputy City Attorney; Claudia Quintana, City Attorney; Office of the City Attorney, Vallejo, California; Adam W. Hofmann and Josephine K. Mason, Hanson Bridgett LLP, San Francisco, California; for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

The City of Vallejo requires individuals to obtain permits before they use sound-amplifying devices within the City. Joseph Cuviello seeks to use a bullhorn so that he can amplify his voice during weekend protests of alleged animal mistreatment at Six Flags Discovery Park ("Six Flags") in Vallejo, where the noise of the park hampers his ability to spread his message. Concerned that the City would enforce the permit requirement against him, Cuviello filed this action, contending that the requirement violates the First Amendment of the United States Constitution and the Liberty of Speech Clause of the California Constitution. Cuviello moved for a preliminary injunction to enjoin the enforcement of the City's permit system, which the district court denied. We reverse and remand.[1]

---

[1] We have jurisdiction under 28 U.S.C. § 1292(a)(1).

**I.**

**A.**

Cuviello protests abuse and mistreatment of animals by circuses and other entertainment entities. For over a decade, Cuviello has called attention to the treatment of animals kept in captivity and used in attractions at Six Flags. Between 2006 and 2014, Cuviello regularly demonstrated at Six Flags, displaying signs and video footage of animal mistreatment as well as distributing information to patrons as they entered the park. In May 2014, however, Park Management Corporation—which owns Six Flags—filed a lawsuit to enjoin demonstrators from protesting on its property and eventually secured a permanent injunction to that effect.**[2]** Since May 2014, Cuviello and his fellow protestors have moved their demonstrations to the public sidewalk along Fairground Drive, which borders Six Flags.

Because both the park entrance and the parking lot are on private property and set back from the nearest public sidewalk, Cuviello and his fellow advocates could no longer physically approach patrons to distribute information and discuss the treatment of animals at Six Flags. To overcome the deafening sound of rollercoasters and other park attractions from the sidewalk, Cuviello began using a

---

**[2]** The California Court of Appeal recently held that the exterior, unticketed portions of Six Flags are a public forum for expressive activity. *See Park Mgmt. Corp. v. In Def. of Animals*, 248 Cal. Rptr. 3d 730, 744 (Cal. Ct. App. 2019). *Park* does not foreclose the possibility that Cuviello can be prosecuted for failing to have a permit to use sound amplification in these exterior portions of Six Flags and on the public sidewalk outside the park.

bullhorn to amplify his voice and increase the chances that patrons could hear his message from inside their cars.

Chapter 8.56 of the Vallejo Municipal Code governs the use of sound-amplifying or loudspeaking devices, including bullhorns. Vallejo, Cal., Municipal Code, tit. 8, ch. 8.56. When Cuviello first began using a bullhorn at protests in 2015, Section 8.56.101 of Chapter 8.56 provided:

> It is unlawful for any person . . . to operate or cause to be operated any sound amplifying or loudspeaking device . . . upon any public street, parkway, thoroughfare, or on privately or publicly owned property, without first obtaining a permit from the chief of police to do so.

Vallejo, Cal., Municipal Code, § 8.56.101 (1997). To obtain a permit to use a sound amplifying device, individuals were required to complete and file an application with the chief of police and pay a fee. The application required the applicant's name, contact information, and basic information about the event for which the permit would be used. *Id.* § 8.56.020. The chief of police was required to act on a sound amplification permit within ten days of receiving the application. *Id.* § 8.56.030.

After obtaining a sound amplification permit, the applicant was required to comply with certain regulatory conditions. The sound amplifying device could be used only between 10 a.m. and sunset; the device could not be used within 100 yards of a hospital, clinic, animal care facility, school, church, courthouse, or public library; there could be no amplification of profane, lewd, indecent, or slanderous speech; and the device could not be operated beyond a fifteen-watt level. *Id.* In addition to these restrictions on

permit-holders, Chapter 7.84 of the Vallejo Municipal Code prohibits as a public nuisance "any loud, unnecessary, and unusual noise which disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to any reasonable person of normal sensitiveness residing in the area." Vallejo, Cal., Municipal Code, § 7.84.010 (1997).

Cuviello first became aware of the permit requirement and related restrictions in June 2015, when a fellow demonstrator relayed that a police officer had told him bullhorns could not be used without a permit. Cuviello approached the officer to discuss his use of a bullhorn, and the officer showed him the text of Chapter 8.56. Cuviello did not use his bullhorn for the rest of that day.

In future demonstrations, Cuviello tried to comply with Chapter 8.56's permit and other requirements. He did not apply for a permit for a July 4th protest, to avoid putting Six Flags and the City of Vallejo on notice of the demonstration. He did apply for a permit for a demonstration that occurred a few days later but never received a reply from the Vallejo Police Department. Because he feared being arrested, Cuviello did not use a bullhorn at either demonstration.

Cuviello conducted his own legal research over the subsequent months and concluded that Chapter 8.56—and in particular, Chapter 8.56's permit requirement—was an unconstitutional prior restraint on speech. In September 2015, he e-mailed his findings to Claudia Quintana, the City Attorney of Vallejo, and informed her that he would no longer comply with Chapter 8.56's permit requirements. In response, City Attorney Quintana justified Chapter 8.56's requirements as permissible time, place, and manner restrictions. Unpersuaded, Cuviello again began using his bullhorn at demonstrations outside Six Flags without a permit.

Initially, Cuviello's bullhorn use went unchallenged. But at a demonstration in October 2015, a City of Vallejo police officer approached Cuviello and informed him that he could not use his bullhorn without a permit. Cuviello asked if he would be arrested for continuing to use the bullhorn, and the officer told him that he would only confiscate the bullhorn "as evidence of a crime." Following this warning, Cuviello did not use his bullhorn at any further demonstrations at Six Flags.

**B.**

In October 2016, Cuviello filed this action under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the U.S. Constitution and various California constitutional and statutory free speech protections. *See* U.S. Const. amend. I, XIV; Cal. Const. art 1, § 2a; Cal. Civ. Code § 52.1. Cuviello alleged that Chapter 8.56's permit system was unconstitutional, both on its face and as applied to his actions.

Cuviello challenged the facial validity of Chapter 8.56 on three grounds: first, the permit requirement constituted an impermissible prior restraint on speech in a public forum; second, Chapter 8.56 was unconstitutionally vague because it did not set a deadline to apply for a permit or define "amplifying devices and loudspeakers"; and third, the condition that permit-holders refrain from amplifying profane, lewd, indecent, or slanderous speech vested improper discretion in police officers to regulate speech based on its content. Cuviello also contended that the City of Vallejo's threatened enforcement of the permit requirement against him constituted a prior restraint.

In March 2017, Cuviello moved for a preliminary injunction to enjoin enforcement of Chapter 8.56's permit

system.  The district court denied the preliminary injunction, concluding that Cuviello had not established a likelihood of success on the merits of any of his claims.  The district court rejected Cuviello's arguments that Chapter 8.56 was an improper prior restraint, void for vagueness, or impermissibly content-based, and instead held that Chapter 8.56's requirements could be justified as permissible time, place, and manner restrictions on speech in a public forum. The district court further noted that even if Cuviello was likely to succeed on the merits, he had not shown a risk of irreparable harm, that the balance of hardships tipped in his favor, or that the public interest favored a preliminary injunction.  Cuviello timely appealed.

After both parties filed their appellate briefs, the City of Vallejo amended Chapter 8.56.  The City Council added legislative findings justifying the regulation of sound amplification devices, *see* Vallejo, Cal., Municipal Code § 8.56.010 (2016), and moved the permit requirement to Section 8.56.030.  Section 8.56.030 now states that any person who wishes to use a sound amplifying device "upon any public street, parkway, thoroughfare, or on privately or publicly owned property" must obtain a permit from the City of Vallejo Chief of Police.  *See id.* §§ 8.56.030, 8.56.090. The new section also eliminates the permit-fee requirement, defines "sound amplifying devices," shortens the processing time for permit approval to three days, includes a process to appeal the denial of a permit, and eliminates the prohibition on amplifying profane, lewd, indecent, or slanderous speech. *Id.* §§ 8.56.020, 8.56.080, 8.56.100.

Although Cuviello no longer argues that Chapter 8.56's permit system is vague or impermissibly content-based, he continues to argue that Section 8.56.030's permit requirement imposes a prior restraint on speech in a public

forum that cannot be justified as a permissible time, place, and manner restriction.[3]

## II.

In light of the City of Vallejo's recent amendments to Chapter 8.56, we first consider whether Cuviello's case is moot. Article III of the United States Constitution limits our jurisdiction to cases or controversies. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 861 (9th Cir. 2017). "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). When subsequent events resolve the dispute, such that no live issues remain or the parties lack a legally cognizable interest in the outcome, a case becomes moot. *Id.* at 1086–87.

To determine whether a legislative change has rendered a controversy moot, we ask "whether the new ordinance is sufficiently similar to the [previously challenged] ordinance that it is permissible to say that the challenged conduct continues." *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993). If the amended ordinance threatens to harm a plaintiff in the same fundamental way—even if to a lesser degree—the plaintiff will still have a live claim for prospective relief. *Id.* at 662. We are particularly wary of legislative changes made in direct response to litigation. *See Bd. of Trustees of the Glazing Health and Welfare Trust v. Chambers*, No. 16-15588, 2019 WL 5797212, at *3 (9th Cir.

---

[3] In keeping with the amendments to Chapter 8.56, we refer to Section 8.56.030 when discussing the permit requirement.

Nov. 7, 2019) ("[I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.").

In his complaint and motion for a preliminary injunction, Cuviello argued that the permit requirement burdened his state and federal constitutional rights to use a bullhorn. Even after the City amended Chapter 8.56, it retained the permit requirement in Section 8.56.030. *See* Vallejo, Cal., Municipal Code § 8.56.030. The only meaningful difference between Section 8.56.030 and the prior version of the permit requirement is the elimination of any fee. *See id.* Although this lessens the asserted harm caused by the permit requirement, it does not eliminate it. *Cf. Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 662. The gravamen of Cuviello's complaint and the irreparable harm that Cuviello alleges remain unaffected by the amendments to Chapter 8.56. Thus, we conclude that Cuviello's appeal is not moot and proceed to the merits.[4]

---

[4] Although Cuviello's central claim against Section 8.56.030 presents an actual, ongoing controversy, his initial challenges to other aspects of Chapter 8.56 are now moot, and he does not appeal the district court's order on those grounds. Amended Chapter 8.56 defines the term that Cuviello had alleged was impermissibly vague, *see* Vallejo, Cal., Municipal Code § 8.56.020(A), and no longer retains the provision Cuviello had alleged was unconstitutionally content-based. Cuviello abandons those arguments in his supplemental briefs, and we do not address them.

## III.

The United States Constitution and California Constitution protect bullhorns, and other sound-amplifying devices, as "indispensable instruments" of public speech. *Saia v. People of State of New York*, 334 U.S. 558, 561 (1948); *Wollam v. City of Palm Springs*, 379 P.2d 481, 485 (Cal. 1963). In a crowded park or bustling intersection, where a single voice is easily drowned out, volume enables speech. *See Wollam*, 379 P.2d at 486. A restriction on volume, then, can effectively function as a restriction on speech. *Saia*, 334 U.S. at 561–62; *Wollam*, 379 P.2d at 486 ("The right of free speech necessarily embodies the means used for its dissemination because the right is worthless in the absence of a meaningful method of its expression."). But there are good reasons for regulating sound-amplifying devices. As federal and California courts have recognized, these devices can produce noise that is unpleasant and, certainly, "[u]nrestrained use throughout a municipality of all sound amplifying devices would be intolerable." *Kovacs v. Cooper*, 336 U.S. 77, 81 (1949); *see also Reeves v. McConn*, 631 F.2d 377, 382–83 (5th Cir. 1980); *Wollam*, 379 P.2d at 485. Nonetheless, municipalities must ensure that even a well-intentioned restriction does not give way to suppression of speech. *See Saia*, 334 U.S. at 562; *Wollam*, 379 P.2d at 485. With these principles in mind, we turn to Cuviello's motion for a preliminary injunction.

To prevail on a motion for a preliminary injunction, Cuviello must show that: (1) he is likely to succeed on the merits on his state or federal claims; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *See Winter v. Nat. Res. Defense Council*, 555 U.S. 7, 20 (2008).

We review for abuse of discretion the district court's ultimate decision to grant or deny a preliminary injunction. *See Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). "The district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law." *Id.*

## A.

We first review the district court's conclusion that Cuviello is unlikely to succeed on the merits of his state and federal constitutional claims. His primary argument is that Section 8.56.030's permit requirement imposes an unconstitutional prior restraint on public speech in violation of the California Constitution's Liberty of Speech Clause and the First Amendment to the United States Constitution.

Because Cuviello raises both federal and state constitutional claims, we must clarify the scope of our analysis. "It is well-established that this court should avoid adjudication of federal constitutional claims when alternative state grounds are available . . . . even when the alternative ground is one of state constitutional law." *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (citations and internal quotation marks omitted). "Where the state constitutional provisions are co-extensive with related federal constitutional provisions, we may decide the federal constitutional claims because that analysis will also decide the state constitutional claims." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994). "[W]here the state provisions offer more expansive protection than the federal constitution, we must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.*

As we have recognized, the California Constitution's protection of free speech can be broader in some respects than the protection provided by the First Amendment. *See Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004). The First Amendment's protection of public speech applies with greatest force in a traditional public forum such as a public sidewalk, *see Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009), but the California Constitution provides such protection to any public speech that is not "basically incompatible with the normal activity of a particular place at a particular time." *Kuba*, 387 F.3d at 857 (quoting *Carreras v. City of Anaheim*, 768 F.2d 1039, 1045 (9th Cir. 1985)).

With regard to prior restraints, both the California Constitution's Liberty of Speech Clause and the First Amendment recognize that "[a] permitting requirement is a prior restraint on speech and therefore bears a 'heavy presumption' against its constitutionality."[5] *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) (citing *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992)); *Dulaney v. Mun. Court*, 520 P.2d 1, 5–6 (Cal. 1974); *EWAP, Inc. v. City of Los Angeles*, 158 Cal. Rptr. 579, 582 (Cal. Ct. App. 1979). "Both the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may

---

[5] While the prior restraint doctrine developed in response to laws that outright prohibited speech prior to publication, *see generally Near v. State of Minnesota*, 283 U.S. 697 (1931), the doctrine encompasses laws that require a permit in advance of exercising speech rights. *See Forsyth Cty.*, 505 U.S. at 130–31; *Berger*, 569 F.3d at 1037. Permit systems are accorded the same presumption of unconstitutionality as a ban on speech prior to publication. *See Forsyth Cty.*, 505 U.S. at 130–31.

discourage potential speakers." *Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994).

Nonetheless, both the Liberty of Speech Clause and the First Amendment allow municipalities to promulgate permit systems that place reasonable time, place, and manner restrictions on speech in a public forum. *See Forsyth Cty.*, 505 U.S. at 130; *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023–24 (9th Cir. 2009); *L.A. Alliance for Survival v. City of Los Angeles*, 993 P.2d 334, 362, 365 (Cal. 2000); *EWAP, Inc.*, 158 Cal. Rptr. at 585. The standard for evaluating a reasonable time, place, and manner restriction is the same under California and federal law. *See Dulaney*, 520 P.2d at 6 (noting that California's standard for evaluating a time, place, and manner restriction in a public forum is "fashioned from a long line of United States Supreme Court cases"); *accord Int'l Soc'y for Krishna Consciousness v. City of Los Angeles*, 227 P.3d 395, 402 (Cal. 2010). To pass constitutional muster, a permit system must satisfy four criteria. *Long Beach Area Peace Network*, 574 F.3d at 1023–24; *L.A. Alliance for Survival*, 993 P.2d at 340. First, the permit system must not delegate overly broad licensing discretion to a government official. *See Long Beach Area Peace Network*, 574 F.3d at 1024; *Int'l Soc'y for Krishna Consciousness*, 227 P.2d at 401–402. Second, the system must not be based on the content of the message. *Long Beach Area Peace Network*, 574 F.3d at 1023; *L.A. Alliance for Survival*, 993 P.2d at 340. Third, the system must be narrowly tailored to serve a significant governmental interest. *Long Beach Area Peace Network*, 574 F.3d at 1023; *L.A. Alliance for Survival*, 993 P.2d at 340. Finally, the system must leave open ample alternatives for communication. *Long Beach Area Peace Network*, 574 F.3d at 1023; *L.A. Alliance for Survival*, 993 P.2d at 340.

Cuviello argues that Section 8.56.030's permit requirement imposes a prior restraint on public speech in violation of both the California and United States Constitutions. To evaluate his likelihood of success on the merits, we address Cuviello's state constitutional claim, rather than his First Amendment claim, because the California Constitution's protection of public speech sweeps more broadly than the First Amendment's protection. *See Kuba*, 387 F.3d at 857–58. Under California law, because Section 8.56.030 establishes a permit requirement in advance of public speech and bans an instrumentality of speech absent a permit, it imposes a prior restraint.[6] *See Dulaney*, 520 P.2d at 5–6; *EWAP, Inc.*, 158 Cal. Rptr. at 582. Thus, we must evaluate whether Section 8.56.030's permit requirement constitutes a reasonable time, place, and manner restriction. *See L.A. Alliance for Survival*, 993 P.2d at 340. In accordance with California law, we look to federal standards to resolve this inquiry. *See Kuba*, 387 F.3d at 857–58.

Here, the only question is whether the district court erred in its analysis of the third factor: whether Section 8.56.030

---

[6] Although Chapter 8.56 as amended no longer requires a permit application fee, the ordinance still imposes a prior restraint. *See Watchtower Bible & Tract Soc'y of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 166 (2002) ("Even if the issuance of permits by the mayor's office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition.").

is narrowly tailored to serve a significant government interest.[7]

## 1.

We first evaluate whether the district court erred in finding that the City's permit requirement serves a significant government interest.  As we noted above, "[u]nrestrained use throughout a municipality of all sound amplifying devices would be intolerable." *Kovacs*, 336 U.S. at 81.  Municipalities have "a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (internal citation omitted).  This interest is at its zenith in residential areas, where citizens have substantial privacy interests. *See Berger*, 569 F.3d at 1039.  Furthermore, where public speech can affect traffic safety, municipalities have "a significant governmental interest in . . . ensuring the safety of pedestrians and drivers alike." *Kuba*, 387 F.3d at 858.  The City of Vallejo argues that Section 8.56.030 furthers these interests.[8]

---

[7] Regarding the first factor, neither party argues that Chapter 8.56 gives the chief of police overly broad discretion; Chapter 8.56 delegates virtually no discretion to the chief of police to deny a permit. *See* Vallejo, Cal., Municipal Code § 8.56.080. As to the second factor, after the recent amendments to Chapter 8.56, Cuviello has abandoned his argument that it is content-based. Finally, regarding the fourth factor, Cuviello does not challenge the district court's conclusion that Chapter 8.56 leaves open ample alternative channels for communication. We therefore do not address any of these issues.

[8] Indeed, with the recent amendments, the City of Vallejo has further clarified that Chapter 8.56 is meant to promote "the health, welfare, and safety of the inhabitants of the city" by regulating sound-amplifying

Although Cuviello acknowledges the City's significant interests in preventing noise disturbances that could threaten public health, safety, or welfare, he nonetheless points to our statement in *Kuba* that "merely invoking [significant] interests . . . is insufficient" to meet the government's burden of proof to justify a regulation that burdens free speech. 387 F.3d at 859. Rather, in *Kuba*, we held that "[t]he government must also show that the proposed communicative activity endangers those [significant] interests." *Id.* While a local government bears the burden of proffering a significant interest for a time, place, and manner restriction, this "does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986). As it has long been accepted that sound amplifying devices can endanger public health, safety, and welfare, the City of Vallejo did not need to produce new evidence justifying its interests in regulating them. *See, e.g.*, *Ward*, 491 U.S. at 796–97; *Kovacs*, 336 U.S. at 81–82. Accordingly, the district court did not abuse its discretion by holding that the permit requirement furthered the City of Vallejo's significant interests.

## 2.

We next address whether the district court erred by concluding that the permit requirement is narrowly tailored. We are guided by three considerations when evaluating whether a time, place, and manner regulation is narrowly tailored. *See Long Beach Area Peace Network*, 574 F.3d at 1024. First, we consider whether the regulation

---

devices, which the City notes can create traffic hazards and disturb public peace. *See* Vallejo, Cal., Municipal Code § 8.56.010.

"achieve[s] its ends without restricting substantially more speech than necessary." *Id.* In particular, an ordinance's expansive language can signal that the municipality has burdened substantially more speech than effectively advances its goals. *Id.* at 1025. Second, we look to whether there are "obvious alternatives that would achieve the same objectives with less restriction on speech." *Id.* A municipality need not justify its ordinance as the least restrictive alternative, *see Ward*, 491 U.S. at 798, but "an assessment of alternatives can still bear on the reasonableness of the tailoring." *Long Beach Area Peace Network*, 574 F.3d at 1025 (internal quotation marks omitted). Finally, if the challenged regulation is not necessary to serve the municipality's interests in the instant circumstances, we examine whether a generic regulation is nonetheless needed to regulate other speakers' expressive activity. *Id.*

As to the first consideration, although we recognize a city's need to implement permit requirements for some speech in public fora, we have noted several ways in which these requirements can burden substantially more speech than necessary. A permit requirement burdens more speech than necessary when it exceeds the scope of the municipality's significant interests. For this reason, we invalidated a City of Long Beach ordinance that required a permit at least twenty-four hours in advance of any spontaneous assembly; although the city claimed the requirement was necessary to control traffic flow, we found it excessive because the regulation required notice "irrespective of whether there is any possibility that the event will interfere with traffic flow." *Id.* at 1038. Conversely, in *Rosenbaum v. City and County of San Francisco*, we approved a permit requirement for amplified speech in excess of volume levels prohibited by the city's

nuisance code.  484 F.3d 1142, 1147, 1158 (9th Cir. 2007). In that case, the permit requirement was tailored to advance the city's interest in protecting the public from disturbances caused by excessive noise.  *Id.* at 1160–61.

We have also held that a permit system burdens substantially more speech than necessary when it does not distinguish between speech by individuals and large groups. In *Santa Monica Food Not Bombs v. City of Santa Monica*, we recognized that a city may have an interest in promoting safe and convenient use of public areas by implementing a permit system.  450 F.3d 1022, 1038 (9th Cir. 2006). Nonetheless, "[w]ithout a provision limiting the permitting requirements to larger groups, or some other provision tailoring the regulation to events that realistically present *serious* traffic, safety, and competing use concerns . . . a permitting ordinance is insufficiently narrowly tailored to withstand time, place, and manner scrutiny." *Id.* at 1039. As we noted in *Berger*, "we and almost every other circuit to have considered the issue have refused to uphold registration requirements that apply to individual speakers or small groups in a public forum." 569 F.3d at 1039; *see also Grossman*, 33 F.3d at 1206 (finding a permit requirement for group gatherings in a park insufficiently tailored for not distinguishing between small and large groups).

Beyond the example of permit systems, we have found other time, place, and manner restrictions to be insufficiently tailored where they are "geographically overinclusive." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011).  In *Comite de Jornaleros de Redondo Beach*, we held that an ordinance barring individual solicitation on all streets and highways was not narrowly tailored to further the city's interest in preventing traffic problems.  *Id.*  While we noted that the city

might be able to justify the ban with regard to major streets and medians, "[b]y applying the Ordinance citywide to all streets, alleys, and sidewalks, the City has burdened substantially more solicitation than is reasonably necessary to achieve its purpose." *Id.*; *see also Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972) (finding an anti-noise ordinance not to be geographically overinclusive because it only applied within 150 feet of a school building).

Regarding our second consideration—whether there are obvious alternatives that could achieve the same aims with lesser impact on speech—we have approved alternatives more narrowly tailored than blanket permit requirements for public speech. In particular, we have favored systems that direct enforcement of existing rules against those who actually exhibit unwanted behavior rather than require all speakers to seek approval from the municipality prior to engaging in speech. *See Berger*, 569 F.3d at 1044. "[B]y punishing only actual wrongdoers, rather than screening potential speakers[,]" a municipality can achieve its goal of protecting citizens from disorderly or disruptive expressive activities without penalizing speakers who do respect the municipality's rules. *Id.* (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)); *see also generally Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980); *Schneider v. State of New Jersey*, 308 U.S. 147 (1939).

On its face, Section 8.56.030 contains many of the features we have identified as burdening more speech than necessary. Although the City of Vallejo argues that Section 8.56.030 furthers its interests in preventing noise that disturbs the peace and creates traffic dangers, Section 8.56.030 requires a permit for *any* use of a sound-amplifying device at *any* volume by *any* person at *any* location—

without any specifications or limitations that may tailor the permit requirement to situations involving the most serious risk to public peace or traffic safety.  Vallejo, Cal., Municipal Code § 8.56.030; *see also Santa Monica Food Not Bombs*, 450 F.3d at 1039.  Hence, Section 8.56.030 applies with the same force to an individual and to a rally of one-hundred people; to the use of a device in an empty parking lot and at the busiest intersection; to the use of a device at a child's weekend birthday party in an already noisy park and to the use of a device by demonstrators next to a hospital at 2 a.m.; and so on.  Without any limitations that tailor the permit requirement to circumstances where public peace and traffic safety are actually at risk, Section 8.56.030 covers substantially more speech than necessary to achieve its ends.[9]

Section 8.56.030's broad sweep is more apparent when applied to the facts of this case.  Cuviello wishes to use a bullhorn in demonstrations on the public sidewalk next to Six Flags.  This is not an area of the city where people come to seek peace and quietude or to avoid distraction.  Rather, this is already a noisy area, where patrons flock in droves and scream on various thrill rides.  Amidst all the noise, the sound of one bullhorn likely would not cause an additional disturbance to traffic safety or public peace.  It is difficult to see how requiring prior notice of Cuviello's bullhorn use in this area would advance the City's expressed interests in promoting public peace or traffic safety.  The City has offered no evidence to the contrary.

---

[9] The City of Vallejo urges us to look to *Rosenbaum* and conclude that Section 8.56.030 is narrowly tailored, but the permit requirement at issue in *Rosenbaum* was far more limited than the one at issue here. *See* 484 F.3d at 1147.

The district court's narrow tailoring analysis failed to recognize the breadth of the permit requirement. The district court did not apply the tailoring guidelines we outlined for permit requirements in *Long Beach Area Peace Network*, *Santa Monica Food Not Bombs*, and *Comite de Jornaleros de Redondo Beach*. Instead, the district court pointed to Chapter 8.56's conditions for using a sound-amplifying device—which attach when the permit is approved—as evidence that the permit requirement is narrowly tailored. Vallejo, Cal., Municipal Code § 8.56.060. Treating the conditions of use as interchangeable with the permit requirement misunderstands the injury caused by the permit requirement. *See Berger*, 569 F.3d at 1038. The permit requirement is "offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak . . . and then obtain a permit to do so." *Id.* at 1037 (quoting *Watchtower Bible & Tract Soc'y of N.Y.*, 536 U.S. at 165–66 (2002)). By disregarding the injury caused by the permit requirement as a prior restraint on speech and failing to apply our law on the acceptable scope of such permit requirements, the district court erred in its narrow tailoring analysis.[10] The district court thus abused its discretion in concluding that Cuviello was unlikely to succeed on the merits of his state constitutional claim.

---

[10] Cuviello argues that the district court also erred in its narrow tailoring analysis by disregarding the City of Vallejo's prohibitions on noises that create a nuisance as an obvious alternative that could achieve the City of Vallejo's interests with less impact on speech. We do not address this argument as we find that the district court abused its discretion in failing to recognize that Chapter 8.56 burdens substantially more speech than necessary.

**B.**

Our inquiry does not end at the first element of the preliminary injunction test. Even where a plaintiff demonstrates a likelihood of success on the merits of a free speech claim, he "must also demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction, and that the balance of equities and public interest tip in his favor."[11] *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009). The latter three elements do not collapse into the merits question. *See DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). Therefore, although Cuviello's colorable speech claim "certainly raises the specter of irreparable harm," *id.*, we must still examine whether the district court abused its discretion by concluding that Cuviello failed to show a risk of irreparable harm.

Prior restraints on speech present some of the "most serious and the least tolerable infringement" on free speech rights. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *accord Molinaro v. Molinaro*, 245 Cal. Rptr. 3d 402, 408 (Cal. Ct. App. 2019). Whereas a criminal penalty on a type of speech attaches after the speech is uttered—and thus the threat of penalty creates a chilling effect—a prior restraint stifles speech before it can take place, freezing it altogether. *See Nebraska Press Ass'n*, 427 U.S. at 559. Even if that freeze is only temporary, the loss or threatened infringement upon free speech rights "for even minimal

---

[11] Although we evaluated the likelihood of success on the merits primarily with reference to Cuviello's state constitutional claim, we still employ federal standards to review the district court's denial of a preliminary injunction. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (evaluating all *Winter* factors where likelihood of the merits turned on both federal and state law claims).

periods of time[] unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

We are acutely aware of the special injury caused by permit systems as a form of prior restraint. Permit systems represent a departure from our tradition of public discourse by requiring a citizen to seek approval from the government to engage in speech. *See Berger*, 569 F.3d at 1037. "Both the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers." *Grossman*, 33 F.3d at 1206. The procedural hurdle may discourage speakers who fear advance retaliation, want their speech to escape government notice for a time, or otherwise value preserving their privacy in advance of the actual speech. *Berger*, 569 F.3d at 1038. The temporal hurdle eliminates the possibility of spontaneous speech, which may disproportionately burden political speech that must respond to changing current events. *Id.*; *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 163 (1969) (Harlan, J., concurring) ("[T]iming is of the essence in politics . . . . [and] it is often necessary to have one's voice heard promptly, if it is to be considered at all.").

Here, not only has Cuviello raised a colorable speech claim, but he has shown that the City's permit requirement violated and continues to infringe on his free speech rights. After being warned that he could not use his bullhorn without a permit, Cuviello stopped using his bullhorn for a time, impacting the effectiveness of his speech in front of a noisy theme park. Thereafter, Cuviello was forced to either suffer this infringement or surrender his ability to speak without providing advance notice of his identity, instead notifying the City of Vallejo of his intended speech activities. When Cuviello did voluntarily surrender his

anonymity and applied for a permit, the temporal hurdle deprived him of his ability to speak spontaneously, and thus he ultimately could not use his bullhorn to speak. After deciding that he would not suffer these infringements on his speech—and thus used his bullhorn without applying for a permit—a police officer warned him that if he continued to use it, the bullhorn would be confiscated as evidence of a crime. Although Chapter 8.56 does not designate a penalty for violating Section 8.56.030, the general provisions of the City of Vallejo provide that the failure to comply with any code requirements constitutes either a misdemeanor or infraction, subject to potential criminal penalties. Vallejo, Cal., Municipal Code § 1.12.010. After receiving this threat, Cuviello ceased using his bullhorn, a protected instrument of speech. *See Saia*, 344 U.S. at 561. As long as Section 8.56.030 remains in effect, the threat of enforcement against Cuviello will persist, chilling his exercise of free speech rights. For these reasons, Cuviello has shown irreparable harm.

In concluding that Cuviello had not established irreparable harm, the district court discounted the injury caused by the threat of enforcement against Cuviello. The court reasoned that because no enforcement action under Chapter 8.56 had been taken against Cuviello or similarly situated individuals, Cuviello had not shown a likelihood of irreparable harm. This reasoning conflicts with established precedent. An ordinance need not be enforced against a speaker to pose a threat to his free speech rights. *See, e.g.*, *Elrod*, 427 U.S. at 373–74. Cuviello continues to restrain his own speech under the threat that Chapter 8.56 will be enforced against him. This chill on his free speech rights— even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm. *See id*.

at 373–74; *see also Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 757–58 (9th Cir. 2019).

The City of Vallejo argues, and the dissent agrees, that Cuviello's showing of irreparable harm is undercut by his delay in filing the present lawsuit and moving for a preliminary injunction.  But there are several reasons that suggest Cuviello's tardiness should not weigh heavily here.

First, Cuviello's delay is only one factor among the many that we consider in evaluating whether a plaintiff is likely to suffer irreparable harm absent interim relief.  It is generally recognized that a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm," *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985), but "[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper." *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988). "Usually, delay is but a single factor to consider in evaluating irreparable injury"; indeed, "courts are loath to withhold relief *solely on that ground*." *Arc of Cal. v. Douglas*, 757 F.3d 975, (9th Cir. 2014) (emphasis added) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)).

Second, although a failure to seek speedy relief can imply the lack of a need for such relief, "such tardiness is not particularly probative in the context of ongoing, worsening injuries." *Douglas*, 757 F.3d at 990.  Cuviello did not suffer a discrete, excisable injury.  Each instance in which Cuviello restrained his own speech contributed to the constitutional injury he suffered.  He continued to protest after learning he would need a permit, but altered his behavior in response to the requirement.

Third, our cases do not require a strong showing of irreparable harm for constitutional injuries.  In situations where the plaintiff's "First Amendment rights [are] being chilled daily, the need for immediate injunctive relief without further delay is, in fact, a direct corollary of the matter's great importance." *Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).  That Cuviello will suffer irreparable harm absent relief "is demonstrated by a long line of precedent establishing that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (alterations and quotations omitted); *see also McDermott v. Ampersand Publishing, LLC*, 593 F.3d 950, 957 (9th Cir. 2010).

Finally, when a plaintiff is pro se, we are also generous in the assumptions we draw about his litigation of the case. *Cf. Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017); *Morris v. Tehama*, 795 F.2d 791, 795 (9th Cir. 1986). In the seventeen months preceding Cuviello's motion for interim relief, he was observing and documenting the enforcement of Chapter 8.56.  Contrary to the dissent's views, we are not surprised that a pro se litigant might take more time than would a lawyer to build his case before moving for relief.  Obtaining injunctive relief from a federal court is not an easy task, even for a skilled attorney. Cuviello's pro se status provides one additional reason to discount the probative value of his delay.

Under these circumstances, Cuviello's delay in filing his complaint and seeking preliminary injunctive relief does not significantly undercut his showing of irreparable harm.  We thus conclude that the district court abused its discretion by failing to recognize a police officer's threat of criminal sanctions against Cuviello as irreparable harm.

## C.

We next consider whether the district court abused its discretion in concluding that the balance of equities does not tip in Cuviello's favor. The chilling of a plaintiff's free speech rights—especially where there is a threat of criminal sanctions—favors a preliminary injunction. *See Doe*, 772 F.3d at 583. To overcome this balance in Cuviello's favor, there must be record evidence that a preliminary injunction will seriously hamper significant governmental interests. *See id.* Here, as previously discussed, the permit requirement has chilled Cuviello's free speech rights and will continue to do so absent preliminary injunctive relief. The City of Vallejo has not pointed to any record evidence that suggests that it will suffer hardship from the issuance of a preliminary injunction.

In finding that the balance of equities did not tip in Cuviello's favor, the district court reasoned that Cuviello had not established a likelihood of success on his claims. As previously discussed, this is not so. Cuviello has shown likelihood of success on the merits as well as irreparable harm stemming from the threat of Chapter 8.56's enforcement against him.

The district court concluded that the City of Vallejo would be hampered in its ability to regulate the use of sound amplifying devices. But the court pointed to no evidence to support this speculation, and indeed the City of Vallejo submitted no such evidence. To overcome the balance of equities in Cuviello's favor, the City of Vallejo was required to present evidence that its significant interests would be seriously hampered. As the City did not meet its burden, the district court abused its discretion in finding that the balance of equities tipped in the City's favor.

**D.**

Finally, we evaluate whether the district court abused its discretion by concluding that a preliminary injunction halting the enforcement of Chapter 8.56 would not be in the public interest. We have "consistently recognized the significant public interest in upholding [free speech] principles." *Assoc. Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (internal quotation marks omitted); *see also Doe*, 772 F.3d at 583 ("[T]he public interest favors the exercise of [free speech] rights."). Because Cuviello has raised a colorable free speech claim and demonstrated that Chapter 8.56 causes irreparable harm, it is well within the public interest to issue a preliminary injunction.

**IV.**

For the reasons stated above, we reverse the district court's denial of Cuviello's motion for a preliminary injunction and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED.**

---

FEINERMAN, District Judge, dissenting:

Joseph Cuviello filed this suit one year after he had last been threatened with enforcement of the challenged ordinance, and he then waited five months after filing suit to move for a preliminary injunction. In my view, this lengthy and unjustified delay shows that Cuviello did not suffer irreparable harm and therefore disentitles him to preliminary injunctive relief.

"A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on [his] rights[,] a plaintiff demonstrates the lack of need for speedy action . . . ." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (internal quotation marks omitted, ellipses in original); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). Applying this principle, we held in *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc), that a plaintiff who waited some five months after a YouTube video was posted to seek to enjoin Google to take it down had not demonstrated irreparable harm. *Id*. at 746. The same result obtains for Cuviello's seventeen-month delay. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming the district court's ruling that the plaintiff failed to demonstrate irreparable harm given its unexplained five-month delay in seeking a preliminary injunction); *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (holding that the plaintiff's "failure to seek injunctive relief for a period of seventeen months … vitiates much of the force of [its] allegations of irreparable harm") (internal quotation marks omitted); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("Absent a good explanation, . . . , 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (same for a fifteen-month delay); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir. 1985) (same for a nine-month delay); *cf. Arc of Cal. v. Douglas*, 757 F.3d 975, 990–91 (9th Cir. 2014) (holding that

a two-year delay did not defeat the plaintiff's showing of irreparable harm because "the magnitude of the potential harm bec[ame] apparent gradually," as the plaintiff suffered "various cuts in compensation, enacted over a period of time and having a cumulative impact," thus "undermining any inference that the plaintiff was sleeping on its rights") (internal quotation marks omitted).

The majority excuses Cuviello's delay on the ground that he brought his case pro se. But Cuviello was no ordinary pro se litigant, as his efforts in the district court and on appeal showed him to be a skilled and formidable advocate. In any event, as we often recognize, pro se litigants are not exempt from the ordinary rules governing the conduct of litigation. *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1140 (9th Cir. 2013) ("A district court may dismiss a pro se complaint for failure to allege compliance with the [Federal Tort Claims Act's] administrative exhaustion requirement if it clearly appears that the deficiency cannot be overcome by amendment."); *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) ("The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the *pro se* layman through the trial thicket.") (internal quotation marks omitted); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("Zivkovic argues that his untimely demand for a jury trial should be excused because he filed his complaint *pro se* and was unaware of the requirements of Rule 38(b). However, Zivkovic's good faith mistake as to the deadline for demanding a jury trial establishes no more than inadvertence, which is not a sufficient basis to grant relief from an untimely jury demand."); *Jacobsen v. Filler*,

790 F.2d 1362, 1364 (9th Cir. 1986) ("*[P]ro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."). The cases cited by the majority—one articulating the unexceptional proposition that pro se pleadings are construed liberally, *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017), and the other declining to impose sanctions on a pro se litigant "who act[ed] in apparent good faith," *Morris v. Tehama Cty.*, 795 F.2d 791, 795 (9th Cir. 1986)—provide no basis to excuse Cuviello's seventeen-month delay.

The majority next submits that Cuviello "was observing and documenting the enforcement of" the challenged ordinance and "tak[ing] more time than would a lawyer to build his case" during the seventeen-month delay. The point fails to persuade. Cuviello's pro se complaint alleges that on June 20, 2015, more than sixteen months before he filed suit,

> [Cuviello] utilized an electric bullhorn at the Six Flags demonstration and was subsequently told by a fellow activist … that Vallejo police officer Garcia[] had informed him that he was not allowed to use a bullhorn without first obtaining a permit for such use.
>
> . . .
>
> Because [Cuviello] did not want to get arrested he did not utilize the bullhorn further on June 20, 2015 . . . .

The complaint then alleges that "[Cuviello] did not utilize a bullhorn at the July 18, 2015 demonstration for fear of being arrested." And the complaint then alleges that on October 31, 2015, exactly a year before he filed suit:

> [Cuviello] again attended a demonstration at Six Flags in Vallejo and utilized a bullhorn and a large screen television, . . . . [Cuviello] used the bullhorn and television for approximately 20 minutes in the presence of Defendant Officers M. Cutnick and Doe before Defendant Officers approached [Cuviello] and asked him if he had a permit to use the bullhorn. [Cuviello] replied he did not. Defendant Officer Cutnick told [Cuviello] without a permit he could not use the bullhorn. [Cuviello] asked Defendant Officer Cutnick if he would be arrested if he continued to use the bullhorn and Defendant Officer Cutnick replied no, but he would confiscate the bullhorn as evidence of a crime. (some capitalization omitted).

Cuviello received the message loud and clear: In the two demonstrations he attended in the ensuing months, he "did not bring his bullhorn based on the October 31, 2015 threat from Defendant Officer Cutnick[] that he would confiscate any bullhorn used at the demonstration without a permit." (some capitalization omitted).

So, Cuviello was warned second-hand in June 2015 that the ordinance did not allow him to use a bullhorn without a permit; he took that warning to heart by stopping his bullhorn use at the June 2015 demonstration and not using a bullhorn at the July 2015 demonstration; he was told by a police officer at the October 31, 2015 demonstration that his bullhorn would be confiscated "as evidence of a crime" if he continued to use it without obtaining a permit; and he then did not bring a bullhorn to the next two demonstrations based on the threat he received at the October 31, 2015

demonstration.  It is perfectly clear that on October 31, 2015, a year before he filed suit and seventeen months before he moved for a preliminary injunction, Cuviello had the complete factual predicate of his suit, as he knew all he needed to know about how Vallejo would enforce the ordinance.  And Cuviello's complaint acknowledges that he then had the legal predicate in hand as well: "Between July 4, 2015 and September 11, 2015[, Cuviello] researched the applicable caselaw regarding the legality of using a bullhorn for free speech and believed that [the ordinance] was unconstitutional . . . ."  Yet, as noted, Cuviello waited until October 31, 2016 to file suit, and then waited an additional five months after that to move for a preliminary injunction.

The record is clear: Cuviello's seventeen-month delay from when he received first-hand the officer's warning that his bullhorn would be confiscated as evidence of a crime to his moving for a preliminary injunction cannot be chalked up to a reasonable delay by a pro se litigant taking care to build his case.  The only plausible explanation, rather, is that Cuviello did not see "an urgent need for speedy action to protect [his] rights." *Lydo Enters.*, 745 F.2d at 1213 (internal quotation marks omitted).  Cuviello's lack of urgency was eminently reasonable, as he and his fellow demonstrators were still able to convey their message to prospective Six Flags patrons from the sidewalk adjoining the park with signs and video footage of animal mistreatment displayed on the large screen television.  (It bears mention parenthetically that there is even less of an urgent need for preliminary injunctive relief now, as the California Court of Appeal ruled in June 2019, in a case in which Cuviello is a party, that the California Constitution protects his right to demonstrate in the exterior, unticketed areas of the Six Flags park, which consist of the ticket windows, a parking lot, and the walkways that connect them, and where he would have even

less of a need for a bullhorn to reach his intended audience. *See Park Mgmt. Corp. v. In Def. of Animals*, 248 Cal. Rptr. 3d 730 (Cal. Ct. App. 2019), *review denied* (Sept. 25, 2019).) Because Cuviello did not act with the urgency the law expects of those seeking preliminary injunctive relief, we should not set aside as an abuse of discretion the district court's denial of such relief.