**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

OCT 26 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

IMMIGRANT LEGAL RESOURCES
CENTER; FREEDOM FOR
IMMIGRANTS, Attorney General,

Petitioners-Appellees,

STATE OF CALIFORNIA,

Intervenor,

v.

CITY OF MCFARLAND,

Respondent-Appellant,

and

CITY OF MCFARLAND PLANNING
COMMISSION,

Respondent,

GEO GROUP, INC.,

Real-party-in-interest.

No.  20-16580

D.C. No.
1:20-cv-00966-TLN-AC

MEMORANDUM[*]

IMMIGRANT LEGAL RESOURCES
CENTER; FREEDOM FOR

No.  20-16557

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

IMMIGRANTS, Attorney General,

     Petitioners-Appellees,

STATE OF CALIFORNIA,

     Intervenor,

 v.

CITY OF MCFARLAND; CITY OF MCFARLAND PLANNING COMMISSION,

     Respondents,

 and

GEO GROUP, INC.,

     Real-party-in-interest-Appellant.

D.C. No.
1:20-cv-00966-TLN-AC

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted October 9, 2020
Pasadena, California

Before: KLEINFELD, HURWITZ, and BUMATAY, Circuit Judges.

The City of McFarland ("the City") and Geo Group, Inc. ("GEO") challenge the district court's preliminary injunction preventing the City from executing modifications to GEO's Conditional Use Permits and barring GEO from accepting or transferring immigration detainees into or out of its two facilities in McFarland,

California. We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion and its interpretation of the underlying legal principles *de novo*. *Cuviello v. City of Vallejo*, 944 F.3d 816, 825–26 (9th Cir. 2019) (citing *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003)). We vacate the preliminary injunction and remand. [1]

1. The district court abused its discretion in finding that Appellees raised "serious questions" as to whether the City violated California Civil Code § 1670.9(d).

First, the City complied with § 1670.9(d)'s requirement that it hold "at least two separate meetings open to the public." Cal. Civ. Code § 1670.9(d)(2). In fact, the City held *three* public meetings to consider the permit modifications: two before the Planning Commission and one before the City Council.

Section 1670.9(d) only requires two public meetings for the permitting authority—"[a] city, county, city and county, or public agency," Cal. Civ. Code § 1670.9(d)—without distinguishing it from the constituent agencies through which it acts. Cities act through their subsidiary departments, and the Planning

---

[1] Immigrant Legal Resources Center and Freedom for Immigrants, two non-profit organizations that provide services to immigrant detainees, sought the injunction against the City and GEO. The City and GEO challenge the organizations' standing to bring this claim. Our precedent dictates that we do not dismiss this case on standing grounds. *See E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1266 (9th Cir. 2020).

Commission acted as an arm of the City. *See, e.g.*, *A Local & Reg'l Monitor v. City of Los Angeles*, 16 Cal. Rptr. 2d 358, 366 (Ct. App. 1993) (describing city's "Planning Commission" as "an arm of the City" when convening a public hearing to consider a zoning proposal). Moreover, the City's municipal code makes clear that the Planning Commission and City Council are constituent parts of the City itself and act on its behalf. *See* McFarland Municipal Code §§ 2.40.010, 17.160.030, 17.160.030.D, 17.148.100.B.1.b (providing that the Planning Commission's permitting decisions are "final" unless timely appealed). Accordingly, the most natural reading of the quoted phrase of the California Civil Code is that "public agency" means an entity other than but analogous to a city, county, or city and county, rather than a subordinate agency within a city, county, or city and county.

Second, the City complied with § 1670.9(d)'s requirement that it provide "notice to the public" of the proposed modifications "at least 180 days before [their] execution." Cal. Civ. Code § 1670.9(d)(1). The City Council approved the proposed modifications on April 23, 2020 but delayed their execution until July 15, 2020—180 days after the Planning Commission first gave public notice.

We reject the argument that the City Council's "approval" on April 23 constitutes an "execution" under § 1670.9(d). The statute itself distinguishes between "approval" and "execution." *See* Cal. Civ. Code § 1670.9(d) (providing that a city "shall not *approve*" a permit unless it has "[p]rovided notice to the public

4

. . . at least 180 days before *execution*") (emphasis added). And, "execute" has a precise meaning: "to bring (a legal document) into its final, legally enforceable form." *Execute*, Black's Law Dictionary (11th ed. 2019). The distinction between "approval" and "execution" is clear from the City's municipal code: Even after approving the permits, the City Council could have rescinded approval before the permits were "issued" on July 15. *See* McFarland Municipal Code § 17.160.050.

Third, the City complied with § 1670.9(d)'s requirement that it "[s]olicit[] and hear[] public comments" before approving the proposed modifications. Cal. Civ. Code § 1670.9(d)(2). On April 23, 2020, the City Council held a public meeting to consider the proposed modifications. Due to the COVID-19 pandemic, the City Council held this meeting virtually, but the meeting was open to the City's residents to attend and participate. Any technical limitations and difficulties participants experienced during the virtual public meeting did not give rise to prejudice. *See Olson v. Hornbrook Cmty. Servs. Dist.*, 245 Cal. Rptr. 3d 236, 247 (Ct. App. 2019). And, any barriers to participation were minimal and consistent with the state's guidance for conducting public hearings during the COVID-19 pandemic. *See, e.g.*, Emergency Order N-29-20 (March 17, 2020) (excusing many of the ordinary public participation guarantees provided by the Brown Act and allowing local bodies to hold meetings via teleconference).

2. The district court abused its discretion in finding a likelihood of irreparable harm. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Notably, the district court focused its irreparable harm analysis on the prospect of harm to third parties. The standard for preliminary injunctions, however, requires irreparable harm to the plaintiffs themselves. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018).

Pursuant to General Order 4.5(e), the panel determines that each party shall bear its own costs. It is so ordered.[2]

**VACATED AND REMANDED.**

---

[2] We GRANT Appellees' motion to take judicial notice (ECF No. 44) and DENY as moot Intervenor's motion to take judicial notice (ECF No. 46).