**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EDWARD J. BYLSMA,
　　　　　*Plaintiff-Appellant,*

v.

BURGER KING CORPORATION, a
Florida corporation and KAIZEN
RESTAURANTS, INC., an Oregon
corporation,
　　　　　*Defendants-Appellees.*

No. 10-36125

D.C. No.
3:10-cv-00403-PK
District of Oregon,
Portland

ORDER
CERTIFYING
QUESTION TO
THE SUPREME
COURT OF
WASHINGTON

Filed January 11, 2012

Before: M. Margaret McKeown and Richard C. Tallman,
Circuit Judges, and Barry T. Moskowitz, District Judge.*

---

## ORDER

Plaintiff-appellant Edward J. Bylsma ("Bylsma") appeals from a final judgment on the pleadings dismissing his diversity action against defendants-appellees Burger King Corp. and Kaizen Restaurants, Inc. (together, "Burger King"). This order certifies to the Supreme Court of Washington the dispositive and unsettled question of Washington state law at issue in this appeal, namely, whether the Washington Product Liability Act ("WPLA") permits relief for emotional distress damages, in the absence of physical injury to the plaintiff pur-

---

*The Honorable Barry T. Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

123

chaser, caused by being served and touching, but not consuming, a contaminated food product.

I

We provide the following summary of facts as alleged by Bylsma. Bylsma is a sheriff's deputy with the Clark County Sheriff's Office. On March 24, 2009, at approximately 1:50 a.m., Deputy Bylsma—while on a break—drove his marked police cruiser to a Burger King restaurant in Vancouver, Washington, operated by Kaizen Restaurants, Inc. Two employees, Gary Herb ("Herb") and Jeremy McDonald ("McDonald"), were working that shift but there was no supervisor on duty. Both Herb and McDonald have criminal records.

Bylsma entered the drive-thru and ordered a Whopper with cheese. He recognized McDonald, but not Herb, from previous visits. After receiving his food, Byslma had an "uneasy feeling" and pulled into another parking lot down the street. *Before* consuming the hamburger, he lifted the top bun and observed a "slimy, clear and white phlegm glob" on the meat patty. He inserted his finger into the glob and then called for back-up.

Later DNA testing revealed that the glob on the meat patty was Herb's saliva. Herb pled guilty to felony assault and was sentenced to 90 days in jail. In a declaration, Bylsma claims that he now suffers ongoing emotional trauma from the incident, including vomiting, nausea, food anxiety, and sleeplessness, and has sought treatment by a mental health professional.

Bylsma commenced this action against Burger King in the United States District Court for the District of Oregon raising claims under Oregon law for product liability, negligence, and vicarious liability. Burger King moved for judgment on the pleadings. United States Magistrate Judge Paul Papak issued

Findings and Recommendations to the district court, recommending that Burger King's motion be granted. Magistrate Judge Papak determined that Washington law applies; the WPLA preempts all other causes of action; and the WPLA does not allow for recovery of mental distress damages caused to a purchaser by a contaminated product in the absence of physical injury. United States District Judge Malcolm F. Marsh adopted the Findings and Recommendations in full, dismissed the case, and Bylsma timely appealed. In this appeal Bylsma does not challenge the district court's conclusion that Washington law applies and that his only potential claim arises under the WPLA; he asserts that even absent physical injury, the WPLA nonetheless allows for recovery on his emotional damages claim.

## II

After briefing and oral argument, we now tender the question which is the basis of our certification order:[1] does the WPLA permit a purchaser to seek relief for emotional distress damages, in the absence of physical injury, caused by being served and touching, but not consuming, a contaminated food product? This question has not been answered by the Washington Supreme Court.

## A

We have been able to locate only one Washington Supreme Court opinion addressing the availability of emotional distress damages under the WPLA. In *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 858 P.2d 1054

---

[1] Even though this course of action was not suggested by either party, we may properly certify a question *sua sponte*. Wash. Rev. Code § 2.60.030(1) ("Certificate procedure may be invoked by a federal court upon its own motion."); *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1095 n.2 (9th Cir. 2003). When asked at oral argument, counsel did not object to certification.

(Wash. 1993), the court held that "a physician who prescribes a drug which injures a patient does not have a cause of action to recover from the drug company for his or her own emotional pain and suffering under the [WPLA]." *Id.* at 1064.

The Washington Supreme Court's analysis began with the WPLA itself, which provides relief "for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product." Wash. Rev. Code § 7.72.010(4). "Harm" is defined by the WPLA to "include[ ] any damages recognized by the courts of this state . . . ." Wash. Rev. Code § 7.72.010(6). The *Fisons* court explained that by defining "harm" in this manner, the Washington Legislature intended to allow for "the continued development of the concept through case law." *Fisons*, 858 P.2d at 1065. Thus, the court held that it had to "look to Washington law to define 'harm' for purposes of the [WPLA]." *Id.*

The *Fisons* court first considered product liability jurisprudence but found nothing directly applicable. *Id.* As the court noted, those cases generally involve "injury caused directly *by the product* to the person or the property of the claimant." *Id.* (emphasis in original). The court then considered cases addressing claims for negligent infliction of emotional distress ("NIED"). *Id.* After reviewing the relevant case law, the *Fisons* court explained that allowing the relief sought by the physician would "substantially extend[ ] [Washington's] prior law regarding when a plaintiff could recover emotional distress damages caused by the physical injuries of a third person," and declined to do so. *Id.* The court also held that cases involving intentional torts could not provide a basis for awarding emotional damages to the physician because the level of fault in a WPLA claim could be considerably less (i.e., negligence or strict liability). *Id.* at 1065-66.

B

*Fisons* requires us to compare Bylsma's claim to analogous Washington case law in order to determine whether the relief sought is allowed under the WPLA. The proper result of such an analysis is unclear.

Looking first to the typical product liability case, Bylsma—unlike the physician in *Fisons*—alleges injury caused directly to him *by the product*. We have not been able find any product liability case allowing emotional distress damages caused by a product in the absence of physical injury. As such, product liability case law alone does not appear to grant relief on Bylsma's claim. Because the WPLA displaced NIED causes of action altogether for product-related claims, *Wash. Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1203-05 (Wash. 1989), it is possible that our analysis should both begin and end with our determination that no existing *product* liability case has allowed the type of relief sought by Bylsma.

Nonetheless, we remain uncertain as to whether the Washington Supreme Court would allow relief under the WPLA by analogizing to NIED cases. Analogizing *negligence*-based claims may be improper when considering the definition of "harm" under the WPLA because that definition could also apply to violations of the WPLA where a *strict liability* standard is imposed. *See* Wash. Rev. Code § 7.72.030(2) ("A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction . . . ."); *cf. Fisons*, 858 P.2d at 1065 ("In a product liability claim, liability can be predicated on negligence or even on strict liability.").[2]

---

[2]Because Bylsma's complaint is styled under Oregon law, the particular WPLA claim Bylsma seeks to pursue is not entirely clear. Though his counsel stated at oral argument that Bylsma asserts a "negligence" claim under the WPLA, his claim may also be characterized as a manufacturing defect claim. *See* Wash. Rev. Code § 7.72.030 (establishing liability against a manufacturer based on design defects, failure to warn, and manufacturing defects).

In *Fisons,* however, the court considered NIED case law in analyzing whether the relief sought by the third-party physician was available under the WPLA. While Bylsma's direct claim does not implicate a third-party, it may be appropriate for us to consider NIED case law. *See Fisons*, 858 P.2d at 1065 (explaining that the Legislature intended to allow for "the *continued* development of the concept [of 'harm' compensable under the WPLA] through case law" (emphasis added)). *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 577 P.2d 580 (Wash. 1978), presents the most analogous fact-pattern. In *Corrigal*, the court found that a woman had stated an NIED claim when a funeral home, which had agreed to cremate her son's body and return his remains to her in an urn, mailed her the remains in a plastic bag. *Id.* at 581. The plaintiff touched what she thought was packaging material and suffered emotional distress when she realized it was actually her son's bones and ashes. *Id.*

Though *Corrigal* was not a product liability case, it too involves emotional damages arising from receiving and touching something startling that did not meet specifications. We presume that *Corrigal* should be read in light of subsequent cases like *Gain* and *Hegel*, which imposed additional limitations on bystander NIED claims (i.e., claims for mental suffering caused by observing injury to another). *Gain v. Carroll Mill Co.*, 787 P.2d 553, 554 (Wash. 1990) (holding that a claim for NIED "caused by the negligent bodily injury of a family member . . . was properly dismissed, as the plaintiffs were not physically present at the scene of the accident"); *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998) (holding that emotional distress must be "susceptible to medical diagnosis and proved through medical evidence").

The Washington Supreme Court recently stated (in a footnote) that *Corrigal* "no longer controls with regard to requirements for a claim of negligent infliction of emotional distress," but acknowledged that "in *Corrigal* the plaintiff was physically present and actually felt her son's remains as a

result of the funeral home's negligence." *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497, 505 n.3 (Wash. 2008). The court noted that the limitations set forth in *Gain* and *Hegel* "were not considered in *Corrigal*," but did not determine whether those limitations would have precluded relief. *Id.* Thus, the applicability of the limitations on relief established in bystander NIED cases to a direct NIED claim (where the plaintiff was the direct victim of the defendant's alleged negligence) remains unresolved. We do not know whether the Washington Supreme Court would import those limitations into direct NIED claims. *See Fisons*, 858 P.2d at 1065 ("Generally, in cases where emotional distress is not a consequence of physical injury, or caused by intentional conduct, Washington courts have been cautious about extending a right to recovery, especially when the distress is the consequence of an injury suffered by a third person.").

Given the uncertainty of the law in this area, we believe it is appropriate to defer to the Washington Supreme Court on this important issue of state law.

C

Based on the foregoing, we conclude that the issue presented in this appeal—whether the WPLA permits relief for emotional distress caused to a direct purchaser by a contaminated product in the absence of physical injury—"has not been clearly determined" by the Washington courts. Wash. Rev. Code § 2.60.020. Because the answer to our question is outcome determinative, its resolution is "necessary . . . to dispose" of this appeal. *Id.*

If clarified definitively by the Washington Supreme Court, the answer to the unsettled question of law presented by Bylsma's appeal will have far-reaching effects on those involved in the manufacture and sale of products in Washington. We are reluctant to create uncertainty in this area of the law by answering this question ourselves in the first instance.

## ORDER

In light of our foregoing discussion, we respectfully certify to the Washington Supreme Court the following question:

> Does the Washington Product Liability Act permit relief for emotional distress damages, in the absence of physical injury, caused to the direct purchaser by being served and touching, but not consuming, a contaminated food product?

We do not intend, by the phrasing of this question, to restrict the Washington Supreme Court's consideration of this issue. We acknowledge that the Washington Supreme Court may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG,* 196 F.3d 1075, 1076 (9th Cir. 1999); *Lenhardt v. Ford Motor Co.*, 683 P.2d 1097, 1098 (Wash. 1984).

If the Washington Supreme Court accepts review of the certified question, we designate Bylsma to file the first brief pursuant to Wash. R. App. P. 16.16(e)(1).

The Clerk of Court is hereby ordered to transmit forthwith to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.010(4), 2.60.030(2), and Wash. R. App. P. 16.16.

Further proceedings in this court are stayed pending the Washington Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. The case is withdrawn from submission until further order from this court. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to decline to answer the certified question. When the Washington Supreme Court decides whether or not to accept the certified question,

the parties shall file a joint status report informing this court of the decision. If the Washington Supreme Court accepts the certified question, the parties shall file a joint status report informing this court when the Washington Supreme Court issues its answer.

It is so **ORDERED.**