**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK POTTER,
*Plaintiff-Appellant*,

v.

CITY OF LACEY,
*Defendant-Appellee*,

and

KEN SEMKO,

*Defendant.*

No. 21-35259

D.C. No.
3:20-cv-05925-RJB

ORDER
CERTIFYING
QUESTION TO THE
WASHINGTON
SUPREME COURT

Filed August 18, 2022

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Mark J. Bennett, Circuit Judges.

Order;
Dissent by Judge Bennett

## SUMMARY[*]

---

### Civil Rights

In an action involving federal and state constitutional challenges to the City of Lacey's recently passed RV Parking Ordinance, the panel certified the following question to the Washington Supreme Court:

> Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV Parking Ordinance codified in LMC §§ 10.14.020–045 violate Jack Potter's intrastate travel rights?

In certifying the question, the panel noted that it is well-established that adjudication of federal constitutional claims should be avoided when alternative state grounds are available, even when the alternative ground is one of state constitutional law. Here, the certified question was outcome determinative—if Washington law required the panel to invalidate the ordinance because it violated plaintiff's right to intrastate travel under state law, then the panel would not need to adjudicate the federal claims. Although the Washington Supreme Court had concluded that a right to intrastate travel existed under the United States Constitution, it has never decided whether this right exists under the Washington State Constitution or any other source of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Washington law. Because this issue was complex and involved policy considerations that were best left to the State of Washington's own courts, the panel concluded that it was prudent to certify this question to the Washington Supreme Court so that it could determine its own law in the first instance.

Dissenting, Judge Bennett stated that the RV Parking Ordinance does not violate any conception of the right to intrastate travel, even assuming that such right exists— whether under the Washington or federal constitution. The majority therefore erred in (1) certifying two questions of state law that do not meet the requirements for Washington law because their answers are non-dispositive; (2) ignoring that there is already a definitive answer to the certified question under existing law; and (3) invoking constitutional avoidance to avoid rejecting the near-frivolous constitutional challenges under the Fourth and Eighth Amendments.

## COUNSEL

James E. Lobsenz, Carney Badley Spellman P.S., Seattle, Washington; Carrie Graf and Scott Crain, Northwest Justice Project, Olympia, Washington; for Plaintiff-Appellant.

John E. Justice, Law Lyman Daniel Kamerrer & Bogdanovich P.S., Olympia, Washington, for Defendant-Appellee.

**ORDER**

We respectfully ask the Washington Supreme Court to answer the certified question presented below, pursuant to Revised Code of Washington § 2.60.020, because "it is necessary to ascertain the local law of [Washington] state in order to dispose of [this] proceeding and the local law has not been clearly determined." This case involves federal and state constitutional challenges to the City of Lacey's recently passed RV Parking Ordinance. Jack Potter, a former Lacey resident who lives in a trailer hitched to his truck, challenges the RV Parking Ordinance as violative of his rights under both the United States Constitution and Washington State Constitution.

Pertinent to this certification order, Potter claims that the RV Parking Ordinance violates his right to intrastate travel under the Washington State Constitution. We determine that this issue is dispositive and has not been settled by Washington case law. Thus, we respectfully certify the following question to the Washington Supreme Court:

> Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV Parking Ordinance codified in LMC §§ 10.14.020–045 violate Jack Potter's intrastate travel rights?

**I.**

We summarize the material facts. The Lacey City Council enacted Ordinance 1551 on September 12, 2019. Ordinance 1551 amended Lacey's parking laws so that the

laws now restrict the parking of a "recreational vehicle, motor home, mobile home, trailer, camper, vessel or boat upon the improved or unimproved portion of any street, alley, public right-of-way, or publicly owned parking lot for more than four hours" with two exceptions. LMC § 10.14.020(B). First, an RV owner may park temporarily for the purposes of loading or unloading. *Id.* § 10.14.020(B)(1). Second, an RV owner may obtain a permit according to the City Manager's permitting policies and procedures. *See id.* §§ 10.14.020(B)(2), 10.14.045.

If neither exception applies and an RV owner parks for more than four hours on Lacey public land, the ordinance prohibits an RV owner from parking on any City of Lacey "street, alley, public right-of-way or publicly owned parking lot" for the following 24 hours. *Id.* § 10.14.020(C). Lacey punishes violations of these parking provisions with a $35 fine and immediate impoundment of the RV. *Id.* § 10.14.040. These two provisions work in tandem to effectively render it impossible for vehicle-sheltered individuals to live in an RV on Lacey's public land.

Two weeks after the Lacey City Council passed Ordinance 1551, the City Manager adopted a two-tiered permitting system for RVs. The City Manager created one RV permitting system for "Residents," meaning a "Lacey homeowner or renter," and another for "Non-Residents," meaning an "[i]ndividual without a permanent address."

The resident permitting system allows homeowners or renters to request up to four temporary permits each year for visitors, allowing them to park their RVs for up to 48 hours within 150 feet of the resident's home. To obtain these permits, the resident must provide proof of residency, the license plate numbers for the RVs, and the address where the vehicle will be parked.

The non-resident permitting system allows someone without a permanent address to "receive a temporary parking permit in a designated permitted parking area," so long as the requestor is "actively engaged with social services." To obtain a permit, the non-resident must provide a government-issued ID, proof of insurance, and proof of vehicle registration. Anyone requesting a non-resident permit must also disclose all other occupants of the RV. Before issuing a non-resident permit, the Lacey Police Department must conduct a background check on all of the RV's occupants and may deny a permit if the background check reveals that any of the occupants have an existing or outstanding warrant or if any occupant is a registered sex offender. Non-resident permits are valid only "within designated areas of the City for the period indicated on the permit not to exceed 12 hours per day."

For those without a permanent address in Lacey, such as Potter, the permitting exception has been available in theory, but not in practice. Although various Lacey officials have discussed plans to designate a "safe lot" in which non-resident permit holders could park their RVs, Lacey has never actually designated a safe lot. The district court remarked that a "safe lot does not appear to have come to fruition." The City has not contested this in their briefing and the City conceded as much at oral argument. Therefore, the non-resident permitting system is essentially a bridge to nowhere.

This brings us to our plaintiff, Jack Potter. Potter is a 64-year-old man who lived in Lacey for most of the period between 1997 and 2019. Since 2016, Potter's housing stability has varied—at times he lived at a friend's house, at times in a car, and at times in a home on Martin Way East, where he operated the Veterans' Christian Charity's

homeless outreach program. Shortly after spending a stint in the hospital, Potter began living in a 23-foot travel trailer that he hitched to his truck.

In the Spring of 2019, a police officer knocked on Potter's door to tell him that he could no longer park in the private lot where he had been parking. Potter asked the officer where he should go, and the officer informed him that the Lacey City Hall parking hall lot did not have any "No Parking" signs. Potter promptly moved to the City Hall lot, making it his home between May 2019 and October 2019, along with approximately 27 other people who were also living in their vehicles parked in the lot.

On September 27, 2019, after Lacey had passed the RV Parking Ordinance, an officer told Potter and the others staying in the City Hall parking lot that they had to leave within three days or face a ticket. Potter stayed in the parking lot because he hoped to be able to go to a doctor's appointment in Lacey on October 2. On September 30, however, an officer cited him for violating LMC § 10.14.020, and the next day, officers told Potter he needed to leave the parking lot or they would impound his home. Fearing that he would lose his home permanently because he could not afford to pay impoundment fees, Potter left Lacey that day. Throughout all these interactions, the police never directed Potter to a shelter or anywhere else within Lacey to park—Potter had not applied for a non-resident parking permit, but as stated above, a non-resident permit would have made little difference given that Lacey had failed to designate any safe lots where Potter could have used the permit. In his declaration, Potter stated that if he could park his trailer in Lacey without risk of impoundment, he "would immediately move back to Lacey."

In August 2020, Potter sued Lacey in Thurston County Superior Court for damages, declaratory relief, and injunctive relief, claiming that the RV Parking Ordinance codified at LMC §§ 10.14.010–045 violated several of his rights under the United States Constitution and the Washington State Constitution. Lacey then removed the case to federal court. Both parties moved for summary judgment, and the district court ultimately granted summary judgment to Lacey on all of Potter's claims. Potter timely filed a notice of appeal on April 6, 2021, appealing the district court's rulings on his Fourth Amendment claim, his Eighth Amendment claim, his right to intrastate travel claim under the United States Constitution, and his right to intrastate travel claim under the Washington State Constitution.

## II.

## A.

When state law issues are unclear, we may certify a question to a state's highest court "to obtain authoritative answers." *Toner for Toner v. Lederle Labs., Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir. 1986), *amended by* 831 F.2d 180 (9th Cir. 1987). We have concluded that certification may be especially necessary when a panel faces "complex" state law issues carrying "significant policy implications." *See, e.g.*, *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015); *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012).

Washington law authorizes the state supreme court to accept certified questions from the federal courts. Wash. Rev. Code § 2.60.020. Washington's certification statute allows certification where "it is necessary to ascertain the

local law of [Washington] state in order to dispose of [a] proceeding and the local law has not been clearly determined." *Id.* We certify questions that "we believe that the Washington Supreme Court . . . is better qualified to answer. . . in the first instance." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., No. 1*, 294 F.3d 1085, 1092 (9th Cir. 2002). Thus, certification is especially appropriate when a question of law "'has not been clearly determined' by the Washington courts," and "the answer to our question is outcome determinative." *Bylsma v. Burger King Corp.*, 676 F.3d 779, 783 (9th Cir. 2012) (quoting Wash. Rev. Code § 2.60.020).

## B.

Next, we identify the issue that is the basis of our certification order: whether Washington law protects the right to intrastate travel, and if it does, whether Lacey's RV Parking Ordinance violated Potter's right to intrastate travel. On appeal before us, Potter challenges Lacey's RV Parking Ordinance under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as under the Washington State Constitution. "It is well-established that [we] should avoid adjudication of federal constitutional claims when alternative state grounds are available . . . . even when the alternative ground is one of state constitutional law." *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019) (quoting *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (cleaned up)). Thus, this question is outcome determinative—if Washington law requires us to invalidate the ordinance because it violates Potter's right to intrastate travel under state law, then we need not adjudicate his federal claims.

To date, no Washington case has held that a right to intrastate travel exists under Washington state law—to the

extent Washington courts have found a right to intrastate travel, they have done so under only the United States Constitution. Potter grounds his Washington State intrastate travel claim in *Eggert v. City of Seattle*, 505 P.2d 801 (Wash. 1973), and *Macias v. Dep't of Lab. & Indus.*, 668 P.2d 1278 (Wash. 1983), but we conclude that neither case answers this question.

In *Eggert*, the Washington Supreme Court recognized a right to intrastate travel, but solely based on the United States Constitution. *See Eggert*, 505 P.2d at 804 ("The right to travel is a right applicable to intrastate as well as interstate commerce."). In reaching this conclusion, the Washington Supreme Court relied on United States Supreme Court decisions discussing the right to travel under the United States Constitution. *See id.* at 802–05. It made no reference to the Washington State Constitution or any other state legal authorities.

Inversely, the Washington Supreme Court in *Macias* grounded the right to *inter*state travel in both the United States Constitution and the Washington State Constitution, but it did not discuss a right to *intra*state travel. In *Macias*, the Washington Supreme Court invalidated a law that denied migrant farm workers compensation benefits unless they earned at least $150 from the farm that employed them. 668 P.2d at 1279–1280, 1285. The Court grounded its rationale firmly in the right to interstate travel. *Id.* at 1284 (interpreting the Supreme Court's cases concerning "interstate travel" and "interstate migration"). Without further analysis, the Court ended its opinion by stating that Washington's "state constitution privileges and immunities clause independently supports our conclusion that this provision denies appellants equal protection of the law." *Id.* at 1285 (citation omitted). Given that the Court's conclusion

concerned solely the right to interstate travel, this statement provides no foundation for a right to intrastate travel under the Washington State Constitution.

Potter cites a few additional state appellate and state supreme court cases in his reply brief that purportedly support a right to intrastate travel under Washington law, but all of these cases are likewise inapposite. *See State v. Sims*, 256 P.3d 285 (Wash. 2011) (recognizing an appellate court's conclusion that a sentencing condition violated the federal right to intrastate travel); *State v. Schimelpfenig*, 115 P.3d 338, 339 (Wash Ct. App. 2005) (invalidating a banishment order as violative of the right to intrastate travel under the federal constitution); *State v. Alphonse*, 197 P.3d 1211, 1219–20 (Wash. Ct. App. 2008) (recognizing federal right to intrastate travel).

Therefore, we have determined that although the Washington Supreme Court has concluded that a right to intrastate travel exists under the United States Constitution, it has never decided whether this right exists under the Washington State Constitution or any other source of Washington law. Because this issue is complex and involves policy considerations that are best left to the State of Washington's own courts, we have concluded that it is prudent to certify this question to the Washington Supreme Court so that it may determine its own law in the first instance.[1]

---

[1] Unlike our dissenting colleague, we do not presume to know how the Washington Supreme Court will construe its own constitution. The dissent presumes to know the way in which the Washington Supreme Court will define a right to intrastate travel under the Washington State Constitution (should the Washington Supreme court find such a right), and then it urges us to avoid certification because it does not believe that

## III.

In light of the foregoing discussion, we hereby certify the following question to the Washington Supreme Court:

> Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV Parking Ordinance codified in LMC §§ 10.14.020–045 violate Jack Potter's intrastate travel rights?

We do not intend the phrasing of our question to restrict the Washington Supreme Court's consideration of this issue. We recognize that the Washington Supreme Court may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The Clerk of the Court is directed to transmit to the Washington Supreme Court, under official seal of the Ninth Circuit, this order and request for certification along with copies of all relevant briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.020 and 2.60.030.

---

the City of Lacey has violated the right that it predicts the Washington Supreme Court will find. Dissent at 18–25. Thankfully, the Washington State Legislature has provided us with a process that allows us to avoid building an important constitutional ruling on a pile of guesses about how Washington state courts will direct Washington state law— certification pursuant Wash. Rev. Code § 2.60.020. Out of respect for the Washington judiciary's ability to interpret its own constitution, we choose the certification process here.

If the Washington Supreme Court accepts the certified question, we designate Jack Potter as the party to file the first brief pursuant to Wash. R. App. P. 16.16(e)(1).

Further proceedings before us are stayed pending the Washington Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order. The Clerk is directed to administratively close this docket pending further order. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to not accept the certified question.

When the Washington Supreme Court decides whether to accept the certified question, the parties will promptly file a joint status report informing us of the decision. If the Washington Supreme Court accepts the certified question, the parties will file another joint status report informing us when the Washington Supreme Court issues an answer to the certified question promptly upon the issuance of that determination.

**IT IS SO ORDERED.**

/s/ Mary H. Murguia
Chief Judge Mary H. Murguia
U.S. Court of Appeals for the Ninth Circuit

BENNETT, Circuit Judge, dissenting:

Jack Potter challenges the City of Lacey, Washington's four-hour daily cap on recreational vehicle ("RV") parking on public streets and parking lots, which applies unless the RV owner is loading or unloading or has obtained a

municipal parking permit.  *See* Lacey Mun. Code § 10.14.020(B).  The RV Parking Ordinance does not violate any conception of the right to intrastate travel, even assuming that such right exists—whether under the Washington or federal constitution.  Nor does the RV Parking Ordinance violate either the Fourth Amendment on its face or the Eighth Amendment's prohibition on cruel and unusual punishments.

In resisting these conclusions, the majority commits three principal errors.  First, it certifies two questions of state law that do not meet the requirements for certification under Washington law because their answers are non-dispositive.  Second, the majority ignores that there is already a definitive answer to the certified questions under existing law: the RV Parking Ordinance does not infringe any conception of a putative right to intrastate travel.  And third, it inappropriately invokes constitutional avoidance to avoid rejecting the near-frivolous constitutional challenges under the Fourth and Eighth Amendments.  For these reasons, I respectfully dissent from the majority's decision to burden the Washington Supreme Court with these unnecessary questions.

## I.  IMPROPRIETY OF CERTIFICATION

This case is not a proper candidate for certification to the Washington Supreme Court.  We should instead assume without deciding that Washington law recognizes all forms of a right to intrastate travel and hold that the RV Parking Ordinance would not violate such a right, no matter how enunciated.  As explained below, a municipality's four-hour daily cap on *RV parking* on public streets and parking lots does not violate any conception of the putative right to intrastate *travel*.  Because we can make that determination without answering any dispositive, unsettled questions of

Washington law, this case does not meet the requirements for certification.[1]

Under Washington law, a federal court may certify a question of state law when "it is *necessary* to ascertain the local law of this state *in order to dispose of such proceeding* and the local law has not been clearly determined." Wash. Rev. Code § 2.60.020 (emphasis added). The Washington Supreme Court "may entertain" the petition certifying the question. Wash. R. App. P. 16.16(a). Under the certification requirement, if "the answer to our question is outcome determinative," then "its resolution is 'necessary . . . to dispose' of this appeal." *Bylsma v. Burger King Corp.*, 676 F.3d 779, 783 (9th Cir. 2012) (ellipsis in original) (quoting Wash. Rev. Code § 2.60.020). But the answer to the certified questions the majority poses will not "determine the outcome of the appeal currently pending in this court." *Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 853 (9th Cir. 2018).[2] If there is no right to intrastate travel under Washington law or if there is such a right but no violation here, we would still need to decide Potter's challenges under the putative federal constitutional right to intrastate travel, the Fourth Amendment, and the Eighth

---

[1] Certification was first suggested in a question from the panel at oral argument, and no party has requested certification.

[2] Even as a prudential matter under more permissive state certification procedures, our court has exercised judicial restraint by certifying outcome-determinative questions rather than merely questions that *could* be outcome-determinative. *See, e.g.*, Cal. R. Ct. 8.548(a)(1) (authorizing the certification of questions of California law that "could determine the outcome of a matter pending in the requesting court"); *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1005 (9th Cir. 2012) (en banc) (certifying a question to the Supreme Court of California that "will determine the outcome of this appeal").

Amendment.   Only if there is a right to travel under Washington law *and* if the RV Parking Ordinance violates that right would the answers to our two certified questions resolve this case.**³**

It is true that "we have an obligation to consider whether novel state-law questions should be certified—and we have been admonished in the past for failing to do so." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., No. 1*, 294 F.3d 1085, 1086 (9th Cir. 2002).   "Thus, we have certified questions where we've 'believe[d] that the Washington Supreme Court . . . [was] better qualified to answer . . . in the first instance.'" *Pacheco v. United States*, 21 F.4th 1183, 1187 (9th Cir. 2022) (alterations in original) (quoting

---

**³** Some of our cases suggest that the Washington statute authorizes certification when "a dispositive question of state law applies to the *claim*." *Phonsavanh Phongmanivan v. Haynes*, 918 F.3d 1021, 1022 (9th Cir. 2019) (emphasis added); *see also, e.g.*, *Amaker v. King County*, 540 F.3d 1012, 1015 (9th Cir. 2008) (certifying a question when "the answer to the question is dispositive of Amaker's common law claim"). But that is a distinction without a difference here because the RV Parking Ordinance does not violate any existing conception of a right to intrastate travel.   Certification is thus improper because nothing in this case "depends entirely upon the answer provided by the Supreme Court of Washington to our certified question." *J&J Celcom v. AT&T Wireless Servs., Inc.*, 481 F.3d 1138, 1141 (9th Cir. 2007).

The majority's view of certification might not carry the day, anyway.   "The state court and federal court may disagree as to whether a question is truly determinative of the outcome of the case, thus leading the state court to refuse to answer the certified question." Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1685 (1992).   And the Washington Supreme Court employs its own version of constitutional avoidance. *See Stout v. Felix*, 493 P.3d 1170, 1172 (Wash. 2021) ("We will not reach a constitutional issue unless absolutely necessary to the determination of the case." (citation and internal quotation marks omitted)).

*Parents Involved*, 294 F.3d at 1092). But certification is generally inappropriate in a case that does not "raise[] a new and substantial issue of state law in an arena that will have broad application." *Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003). The potential Washington right to intrastate travel is not such an issue given the facts here.

Courts should certify only substantial issues of broad application out of "the spirit of comity and federalism." *Id.* "The primary basis in history and theory for the practice of certifying questions is that it furthers the goals of our federalism." Bruce M. Selya, *Certified Madness: Ask a Silly Question . . .* , 29 Suffolk U. L. Rev. 677, 679 (1995). Because this case does not require us to decide whether Washington law recognizes a right to intrastate travel, certification does not "save[] time, energy, and resources" for either our court or the Washington Supreme Court, nor does it otherwise "help[] build a cooperative judicial federalism." *Perez-Farias v. Global Horizons, Inc.*, 669 F.3d 927, 928 (9th Cir. 2011).

## II. CERTIFIED QUESTIONS

The majority certifies two questions to the Washington Supreme Court:

> Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV Parking Ordinance codified in [Lacey Municipal Code] §§ 10.14.020–045 violate Jack Potter's intrastate travel rights?

Majority Op. 4.

This case requires no answer to the first question because we know the answer to the second. Even assuming that Washington recognizes a right to intrastate travel as broad as any previous conceptions,[4] the RV Parking Ordinance does not violate a right so broadly understood.

Our sister circuits have recognized and considered two versions of a federal constitutional right to intrastate travel. One version is the "right to travel locally through public spaces and roadways." *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002); *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990). This conception might also be called, "the right to free movement." *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003). The other version of the right to intrastate travel is "correlative" to the right to interstate travel. *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971). The right to interstate travel "embraces at least three different components": "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999).[5] The Supreme Court has not identified the source of

---

[4] *See, e.g.*, *Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (assuming without deciding that Tennessee law recognized a constitutionally protectible property interest in continuing medical studies before rejecting a claim based on that interest).

[5] I have found no state or territorial appellate decision recognizing or even assuming a broader conception of the right to intrastate travel, whether under state, territorial, or federal law. *See, e.g.*, *State v. Pelletier*, 125 A.3d 354, 356 n.5 (Me. 2015) (per curiam) (holding that "[w]ithout speculating as to whether such a right exists . . . driver's

licenses are a valid limitation on the right to *intra*state travel, to the extent that such a right is protected under the U.S. Constitution"); *Malone v. Potomac Highlands Airport Auth.*, 786 S.E.2d 594, 600 n.9 (W. Va. 2015) (assuming without deciding the existence of a right to move from place to place but not a right to access certain public places); *In re Contest of Nov. 8, 2011 Gen. Elec.*, 40 A.3d 684, 697–99 (N.J. 2012) (applying intermediate scrutiny to "[r]estrictions that burden a [political] candidate's intrastate movement"); *State v. Doe*, 231 P.3d 1016, 1032 (Idaho 2010) (recognizing that the Supreme Court "has not clearly articulated a right to intrastate travel"); *Formaro v. Polk County*, 773 N.W.2d 834, 840 (Iowa 2009) (assuming without deciding a coterminous federal and state right to free ingress to and egress from certain parts of the state); *Commonwealth v. Weston W.*, 913 N.E.2d 832, 839–41 (Mass. 2009) (recognizing a state right "to move freely within the Commonwealth"); *In re Marriage of Guffin*, 209 P.3d 225, 227–28 (Mont. 2009) (recognizing a federal constitutional "right to freely travel within each of the states"); *State v. Holbach*, 763 N.W.2d 761, 765 (N.D. 2009) (recognizing a federal "constitutional right to intrastate travel" that "is not absolute and may be restricted"); *Standley v. Town of Woodfin*, 661 S.E.2d 728, 730 (N.C. 2008) (recognizing a federal and state "right to travel upon the public streets of a city" (citation omitted)); *State v. J.P.*, 907 So.2d 1101, 1113 (Fla. 2004) (recognizing a state "right to intrastate travel" including "the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest" (citation omitted)); *In re J.W.*, 787 N.E.2d 747, 763 (Ill. 2003) (recognizing a federal constitutional right to intrastate travel); *Davis v. United States*, 781 A.2d 729, 731 n.2 (D.C. 2001) ("Any fundamental right to travel does not encompass a right to engage in intrastate illegal drug activity within 1000 feet of a school."); *State v. Burnett*, 755 N.E.2d 857, 863–65 (Ohio 2001) (recognizing "the [federal] right to travel locally through public spaces and roadways of this state"); *Brandmiller v. Arreola*, 544 N.W.2d 894, 898–900 (Wis. 1996) (recognizing a state "right to travel intrastate," including "to move freely about one's neighborhood, even in an automobile"); *Tobe v. City of Santa Ana*, 892 P.2d 1145, 1163–64 (Cal. 1995) (recognizing a state right to intrastate and intramunicipal travel that allows for "the incidental impact on travel of a law having a purpose other than restriction of the right to travel, and which does not discriminate among classes of persons by penalizing the exercise by some of the right to travel"); *Miss. High Sch. Activities Ass'n v. Coleman ex rel. Laymon*, 631 So.2d 768, 774–75

(Miss. 1994) (understanding the federal right to travel to include an intrastate component); *Mayo v. Nat'l Farmers Union Prop. & Cas. Co.*, 833 P.2d 54, 58–60 (Colo. 1992) (recognizing a right to intrastate travel that does not include a fundamental right to drive an automobile on state highways); *People in Interest of J.M.*, 768 P.2d 219, 221 (Colo. 1989) (recognizing state "rights of freedom of movement and to use the public streets and facilities in a manner that does not interfere with the liberty of others"); *Bruno v. Civil Serv. Comm'n*, 472 A.2d 328, 333–34 (Conn. 1984) (recognizing a federal right to intrastate travel); *Gilman v. Martin*, 662 P.2d 120, 125 (Alaska 1983) ("The right to interstate or intrastate travel is impinged upon only when a governmental entity creates distinctions between residents based upon the duration of their residency, and not when distinctions are created between residents and nonresidents."); *Loiselle v. City of East Providence*, 359 A.2d 345, 348 (R.I. 1976) (recognizing "that the fundamental right to travel, be it of the interstate or intrastate variety, does not embody the right to reside where one wishes and demand municipal employment in some other governmental geographical subdivision" (footnote omitted)); *In re Barcomb*, 315 A.2d 476, 482 (Vt. 1974) ("It may be that that [federal constitutional] right [to interstate travel] extends to intrastate travel, and it may include a correlative right to live in the place of one's choice."); *Eggert v. City of Seattle*, 505 P.2d 801, 804 (Wash. 1973) (recognizing that the federal "right to travel is a right applicable to intrastate as well as interstate commerce"); *Vanderzon v. Vanderzon*, 402 P.3d 219, 231–32 (Utah Ct. App. 2017) (rejecting the argument that the federal "right to interstate travel includes the right of intrastate travel and the right to establish a residence"); *Virgin Islands v. Fredericks*, 54 V.I. 161, 172 (V.I. Super. Ct. 2011) (recognizing that "citizens of the Virgin Islands have a fundamental right to traverse the public roads of the territory"); *Johansen v. La. High Sch. Athletic Ass'n*, 916 So.2d 1081, 1090 (La. Ct. App. 2005) (rejecting a challenge to a state athletic association's decision of bona fide residency "even if a right to intrastate travel exists under our state constitution"); *State v. Hershberger*, 5 P.3d 1004, 1010 (Kan. Ct. App. 2000) (recognizing that laws "regulating traffic and establishing rules of the road . . . were not designed to deter interstate or intrastate migration, nor do they penalize someone for exercising the right to travel"); *State v. Cuypers*, 559 N.W.2d 435, 437 (Minn. Ct. App. 1997) (recognizing a correlative right to intrastate travel); *State v. French*, 883 P.2d 644, 653 n.9 (Haw. Ct. App. 1994) (recognizing that the federal "right to travel is not a right to travel in any manner one wants, free of

the first component. *Id.* at 501. The latter two components spring from the Privileges and Immunities Clause of Article IV, § 2, and the Privileges or Immunities Clause of the Fourteenth Amendment, respectively. *Id.* at 501–03.

The RV Parking Ordinance burdens neither version of the putative right to intrastate travel. And because the RV Parking Ordinance does not burden the putative right, there is no occasion to assess what form of means-end scrutiny, if any, would apply.[6]

---

state regulation" (citation omitted)); *City of Spokane v. Port*, 716 P.2d 945, 946 (Wash. Ct. App. 1986) (recognizing a fundamental federal constitutional right to travel that "applies both to interstate and intrastate travel"); *Musto v. Redford Township*, 357 N.W.2d 791, 792 (Mich. Ct. App. 1984) (recognizing a state right to travel between locations within a state); *Josephine Cnty. Sch. Dist. No. 7 v. Or. Sch. Activities Ass'n*, 515 P.2d 431, 437 (Or. Ct. App. 1973) (recognizing that "the right to travel intrastate is a right protected from discriminatory regulation to the same extent as is [the] right to freedom of interstate movement" (footnote omitted)).

[6] This is a common approach across constitutional rights. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022) (assessing whether the Second Amendment covers an individual's conduct and if it does, assessing whether sufficient government justification displaces the presumptive constitutional protection of the right); *United States v. Stevens*, 559 U.S. 460, 468–72 (2010) (assessing whether the First Amendment protects specific speech and if it does, applying the applicable doctrine); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (assessing whether there is a Fourteenth Amendment liberty or property interest with which the state has interfered and if there is, assessing whether the procedures effectuating the deprivation were constitutionally sufficient); *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59, 64–65 (1988) (assessing whether the Privileges and Immunities Clause covers a citizenship or residency classification

## A. Right to Free Movement

The RV Parking Ordinance does not violate any right to free movement, which some courts have recognized encompasses the "right to travel locally through public spaces and roadways." *Johnson*, 310 F.3d at 495; *Lutz*, 899 F.2d at 268. "[T]he right protects *movement between places* and has no bearing on *access* to a particular place." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); *see also Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012) ("The right to intrastate travel protects the right to move from place to place, not the right to access certain public places."). Thus, impermissible burdens on intrastate travel must involve "a burden imposed on [plaintiffs'] freedom to move between places otherwise open to their presence," *Williams*, 535 F.3d at 76, or

and if it does, assessing whether the classification satisfies means-end scrutiny).

For an ordinance that did burden the putative right to intrastate travel, greater "focus on the source of the constitutional right" would be required to determine an "appropriate standard of [means-end] review." *Saenz*, 526 U.S. at 500. Whether means-end scrutiny would apply at all could depend on whether the right to intrastate travel derives from an enumerated right. *Compare Friedman*, 487 U.S. at 65 (requiring residency classifications to be closely related to the advancement of a substantial state interest under the Privileges and Immunities Clause), *with Bruen*, 142 S. Ct. at 2129 (holding that no form of means-end scrutiny applies to the Second Amendment right). And if the right to intrastate travel derives from an unenumerated right to liberty, as recognized by the Fourteenth Amendment's Due Process Clause, then the level of means-end scrutiny would depend on whether that right is fundamental. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 728 (1997) (recognizing that strict scrutiny applies to fundamental liberty interests protected by the Fourteenth Amendment's Due Process Clause and that rational-basis scrutiny applies to non-fundamental liberty interests).

"interference with free ingress to and egress from certain parts of a State," *Doe v. Miller*, 405 F.3d 700, 713 (8th Cir. 2005). Various cases reflect this conception.[7]

The RV Parking Ordinance does not prevent RV owners from travelling "locally through public spaces and roadways." *Johnson*, 310 F.3d at 495; *Lutz*, 899 F.2d at 268. It simply denies RV owners the ability to *park* their RV on Lacey's public spaces and roadways for longer than four hours within any twenty-four period. *See* Lacey Mun. Code § 10.14.020(B)–(C). The RV Parking Ordinance preserves RV owners' freedom to travel along the very same public spaces and roadways on which it forbids them from parking for more than four hours. Thus, it does not burden the putative right to free movement, nor anyone's freedom to sleep and live in these public spaces without a parked RV (such as in a car, for example, whether large or small).

---

[7] *See Johnson*, 310 F.3d at 502–05 (holding that an ordinance establishing a drug exclusion zone that banned persons from a geographic area for a period violates the right to intrastate travel); *Lutz*, 899 F.2d at 270 (holding that an ordinance banning cruising, or driving across the same point on a public street more than once during a set period, burdens the right to intrastate travel); *King*, 442 F.2d at 649 (holding that a resolution setting a durational municipal residency requirement for public housing violates the right to intrastate travel); *see also, e.g.*, *Hannemann*, 673 F.3d at 756 (holding that a ban from school property does not implicate the right to intrastate travel); *Doe v. City of Lafayette*, 377 F.3d 757, 769–73 (7th Cir. 2004) (en banc) (holding that a sex offender ban from public parks does not implicate the right to intrastate travel); *Ramos*, 353 F.3d at 176–77 & n.3, 182–83 (holding that an ordinance banning passage through public places and establishments during certain hours violates the right to intrastate travel); *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 521–22 & n.6 (6th Cir. 1997) (holding that a resolution banning through-truck traffic on certain roads would violate the right to intrastate travel if such right exists); *Spencer v. Casavilla*, 903 F.2d 171, 174–76 (2d Cir. 1990) (recognizing the right to intrastate travel via bicycle).

Instead, the RV Parking Ordinance imposes normal restrictions on parking (and not on travel)—the sort of restrictions that likely exist in some form in most municipalities throughout Washington, the Ninth Circuit, and the nation.

## B. Correlative Right

The RV Parking Ordinance does not violate a putative right to intrastate travel correlative to the right to interstate travel. A correlative right to intrastate travel could contain three components: (i) the right of a resident of one part of a state to enter and leave another part of the state; (ii) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in a city or municipality; and (iii), for travelers who elect to become residents of a city or municipality, the right to be treated like other residents of that city or municipality. *See Saenz*, 526 U.S. at 500. The first component is addressed by the right to free movement, which, as discussed, the RV Parking Ordinance does not burden. The latter two components focus on the equal treatment of residents and nonresidents of cities and municipalities.

Assessing the putative correlative right to intrastate travel here, two questions arise. Does the RV Parking Ordinance treat visitors to Lacey who choose to become residents the same as it treats existing residents of Lacey? And does the RV Parking Ordinance treat visitors to Lacey as welcome visitors or as unfriendly aliens? The answers to both questions reveal that the RV Parking Ordinance does not infringe on the putative correlative right. First, the RV Parking Ordinance applies to all persons within Lacey,

regardless of residency status.[8]  And second, the RV Parking Ordinance does not treat visiting RV owners as unfriendly aliens rather than welcome visitors.  That it prevents visitors from parking their RVs in public spaces for more than four hours at a time does not hinder their ability to travel to or through, or visit, Lacey—for example, in their moving RV, in an automobile, on bicycle, or by foot.  That the RV Parking Ordinance might deter some RV owners from visiting Lacey is not enough to infringe on the putative right to intrastate travel.  *Cf. Doe*, 405 F.3d at 712 ("That the statute may deter some out-of-state residents from traveling to Iowa because the prospects for a convenient and affordable residence are less promising than elsewhere does not implicate a fundamental right recognized by the Court's right to travel jurisprudence.").  And the fact that the RV Parking Ordinance prevents some people from permanently living in their RVs parked in the City Hall parking lot does not implicate, much less infringe on, any right to travel.[9]

### III.  POTTER'S REMAINING CHALLENGES

The majority seeks to avoid deciding Potter's remaining three federal constitutional challenges to the RV Parking Ordinance—that the ordinance violates the putative *federal* constitutional right to intrastate travel, the Fourth Amendment on its face, and the Eighth Amendment's prohibition on cruel and unusual punishments.  In doing so, the majority invokes the canon of constitutional avoidance: "It is well-established that [we] should avoid adjudication of

---

[8] The Ordinance excepts recreational (and commercial) "vehicles owned by the city, its agents, or assigns."  Lacey Mun. Code § 10.14.020(D).

[9] Potter parked his RV in the Lacey City Hall parking lot and lived there continuously from May until October 8, 2019.

federal constitutional claims when alternative state grounds are available even when the alternative ground is one of state constitutional law." Majority Op. 9 (alteration in original) (quoting *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019) (ellipsis omitted)).

But there is a much simpler way to avoid adjudicating the federal constitutional intrastate travel claim. We can simply assume without deciding that there is a federal constitutional right to intrastate travel and hold that the RV Parking Ordinance does not violate it.[10] And Potter's Fourth and Eighth Amendment challenges border on the frivolous. "Of course, as the Supreme Court has noted repeatedly when formulating the canon of constitutional avoidance, the rule applies when the constitutional issue at hand is a substantial one." *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001). Courts need not avoid deciding "a frivolous, insubstantial, or patently incorrect constitutional argument." *Id.* at 1106 n.17.

## A. Putative Federal Constitutional Right to Intrastate Travel

As discussed above, the RV Parking Ordinance violates neither conception of the putative right to intrastate travel recognized and considered by some of our sister circuits: the right to travel locally through public spaces and roadways,

---

[10] *See, e.g.*, *NASA v. Nelson*, 562 U.S. 134, 138 (2011) (assuming without deciding that the Constitution protects a right to privacy in avoiding disclosure of personal matters before determining that portions of a government background check do not violate it); *United States v. Torres*, 911 F.3d 1253, 1257 (9th Cir. 2019) (assuming without deciding that the Second Amendment extends to unlawfully present aliens before determining that the illegal-or-unlawful-alien-in-possession-of-a-firearm statute does not violate it).

and a correlative right to the right to interstate travel. Neither the Supreme Court nor our court has ever recognized such a right. *See Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 255–56 (1974); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997).[11] And we need not determine the issue today.

---

[11] If anything, the Supreme Court has cast doubt on the right to intrastate travel. It has stated that "a purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other States, unless it is applied *discriminatorily* against them." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993). And while specifically declining to carve out a standalone right to intrastate travel, the Court has acknowledged that travel does not merely mean movement: "Even a bona fide residence requirement would burden the right to travel, if travel meant merely movement." *Mem'l Hosp.*, 415 U.S. at 255–56.

In an opinion lacking a majority, Justice Stevens suggested that there is a liberty interest in "an individual's decision to remain in a public place of his choice." *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (Stevens, J., joined by Souter & Ginsburg, JJ.). But that opinion arose in a case that "did not require any fundamental rights analysis," "merely found that the government could not make some form of human activity criminal without providing minimally adequate notice to individuals concerning the type of activity that would violate the law." 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 15.5 (May 2022 Update).

The Supreme Court's much earlier analysis, which is more receptive of such a right, has since been repudiated. The *Lochner*-era Court observed that under the Articles of Confederation, state citizens "possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom." *United States v. Wheeler*, 254 U.S. 281, 293 (1920), *restricted to its facts and dicta discredited as stated in United States v. Guest*, 383 U.S. 745, 759 n.16 (1966). It also observed that "the right of locomotion, the right to remove from one

place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution." *Williams v. Fears*, 179 U.S. 270, 274 (1900). But the Court has since characterized this discussion as limited to the right to interstate travel. *See Mem'l Hosp.*, 415 U.S. at 280–81. And multiple circuits have noted the uncertainty "whether the travel aspect of cases like *Fears* can be severed from the general spirit of *Lochner v. New York*, 198 U.S. 45 (1905), now thoroughly discredited, that was so prominent in the substantive due process analysis of that period." *Doe*, 405 F.3d at 712 (parallel citation omitted) (quoting *Lutz*, 899 F.2d at 266).

Walking, strolling, and wandering "are historically part of the amenities of life as we have known them." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972). And under the Fourteenth Amendment's Due Process Clause, criminal regulations of these behaviors—like loitering laws—must "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and may not "authorize" or "encourage arbitrary and discriminatory enforcement. *Morales*, 527 U.S. at 56. But the Supreme Court has recognized that individuals do not have an unfettered right to speak or assemble, much less park vehicles, where they please. In the First Amendment context, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). An individual's "choice of where and when" to speak "is not beyond the Government's regulatory reach," as long as the time, place, or manner restrictions satisfy doctrinal requirements. *Snyder v. Phelps*, 562 U.S. 443, 456 (2011). And the Court has relatedly observed that "the use of public streets and sidewalks" is one thing "over which a municipality must rightfully exercise a great deal of control in the interest of traffic regulation and public safety." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969). Even were the Court to recognize a right to intrastate travel, it is thus inconceivable that it would find a benign parking regulation, like the RV Parking Ordinance, to violate such right.

## B. Fourth Amendment – Facial Challenge

Potter also argues that the RV Parking Ordinance violates the Fourth Amendment. Because police never seized Potter's RV, he can raise only a facial Fourth Amendment challenge to the ordinance. *Cf. Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797 (9th Cir. 2001) (concluding that tenants had standing to bring a pre-enforcement facial Fourth Amendment challenge to an ordinance regulating sub-standard and dangerous rental dwellings).

To succeed on a facial challenge, "a plaintiff must establish that a law is unconstitutional in all of its applications," meaning those "applications of the statute in which it actually authorizes or prohibits conduct." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (citation and internal quotation marks omitted). This requirement encompasses "applications in which it is the challenged law alone that authorizes the government's conduct." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1119 n.7 (9th Cir. 2021). "Conduct that is independently authorized by a legal provision or doctrine other than the challenged law is thus not relevant to that law's facial constitutionality." *Id.* If Potter were correct that the RV Parking Ordinance violated the Fourth Amendment *on its face*, then garden-variety parking ordinances across every municipality in the country would, too. But that is not the law. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

Under the RV Parking Ordinance, police may lawfully impound RVs parked for too long on Lacey's public streets and parking lots. "The impoundment of an automobile is a

seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Warrantless seizures are per se unreasonable under the Fourth Amendment unless they satisfy one of "a few specifically established and well-delineated exceptions." *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018) (citation omitted). One such exception is for "community caretaking." *Miranda*, 429 F.3d at 864 (quoting *Opperman*, 428 U.S. at 368). Under the community caretaking exception, an impoundment must both satisfy the terms of its authorizing state statute or local ordinance and be reasonable under the Fourth Amendment. *Id.*

Courts assess whether a seizure is reasonable through two factors geared toward determining whether "impoundment was warranted": (i) "the location of the vehicle," and (ii) "whether the vehicle was actually 'impeding traffic or threatening public safety and convenience' on the streets." *Id.* at 865 (quoting *Opperman*, 428 U.S. at 369). A vehicle threatens public convenience merely by being parked overtime—it need not block traffic or pose any acute danger. *See Opperman*, 428 U.S. at 365–67.[12] A vehicle also threatens public convenience by "being a target for vandalism or theft," among other things. *Miranda*, 429 F.3d at 864. Here, the RV Parking Ordinance authorizes the seizure of RVs that are parked overtime or are a target for vandalism or theft. Because there is at least one

---

[12] *See also United States v. Trujillo*, 993 F.3d 859, 865 (10th Cir. 2021) ("The impounded automobile in *Opperman* was in a lawful parking spot. Perhaps between 2:00 a.m. and 6:00 a.m. it was blocking street-maintenance work, but when it was impounded the sin was parking overtime. A more recently arrived vehicle could have lawfully parked there. It was not blocking the flow of traffic.").

constitutional application of the Ordinance, it is facially constitutional under the Fourth Amendment.

## C.  Eighth Amendment – Cruel and Unusual Punishment

Potter's final argument is that the RV Parking Ordinance imposes a cruel and unusual punishment on RV owners in violation of the Eighth Amendment.  But "[t]he Eighth Amendment's prohibition of 'cruel and unusual punishments' applies only 'after conviction and sentence.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989)).  As a corollary, the Eighth Amendment's prohibition of cruel and unusual punishments "prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019).  Here, the RV Parking Ordinance applies to RV owners outside the criminal process entirely. *Compare* Lacey Mun. Code § 10.14.040 (authorizing only the imposition of a monetary penalty and impoundment of unlawfully parked RVs without using the words, "criminal," "misdemeanor," "felony," or similar), *with, e.g.*, *id.* § 9.28.110 (defining "vehicle prowling" as a "gross misdemeanor" committed by entering or remaining unlawfully in a vehicle "with intent to commit a crime against a person or property therein").  Potter's Eighth Amendment argument thus fails.[13]

---

[13] Potter also cites *Pimental v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020), in which we held that the Eighth Amendment's Excessive Fines Clause applies to parking fines.  Potter has not argued that the potential $35 fine for violating the RV Parking Ordinance is excessive.  *See* Lacey Mun. Code § 10.14.040.  But even if he made this argument, he would be incorrect.  *See Pimental*, 974 F.3d at 925

* * *

We need not and should not burden the Washington Supreme Court with unnecessarily answering questions of state law, especially when this case does not meet the requirements of Washington's certification statute. Nor should we invoke the doctrine of constitutional avoidance here—Potter's constitutional claims are so insubstantial that we should reject them out of hand. Thus, I respectfully dissent.

---

("Considering the [*United States v. Bajakajian*, 524 U.S. 321 (1998)] factors, we hold that the City's initial parking fine of $63 is not grossly disproportional to the underlying offense of overstaying the time at a parking space.").